957 P.2d 1010

In re the MARRIAGE OF Sharon H. GADDIS, Petitioner/Appellee,

and

Eugene H. Gaddis, Respondent/Appellant.

No. 2 CA–CV 96–0315.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 14, 1997.

Reconsideration Denied Sept. 10, 1997.

Review Denied June 2, 1998.

Cynthia L. Anson, Tucson, for Petitioner/Appellee.

Eugene H. Gaddis, Tucson, In Propria Persona.

## OPINION

PELANDER, Presiding Judge.

The issue in this domestic relations case is whether, after a final decree of dissolution has been entered, a retired veteran may reduce his or her former spouse's community property interest in military retirement pay by obtaining civil service employment. The trial court prohibited such a reduction and thereby preserved the decree's allocation of community property to petitioner Sharon Gaddis (wife). Because we conclude that the trial court's order is consistent with the decree and Arizona law and does not conflict with federal law, we affirm.

## BACKGROUND

The parties were divorced in April 1993, after almost twenty-eight years of marriage. Respondent Eugene Gaddis (husband) was a member of the United States Air Force throughout the marriage and had retired in April 1992. The trial court initially entered a dissolution decree under which wife waived any rights to husband's military retirement pay. After an evidentiary hearing on wife's motion to set aside the decree, the trial court entered judgment in November 1994, awarding her "one-half of [husband's] military retirement benefits as of February 1994." Wife also received the family home, while husband received substantial savings bonds and interests in credit union and individual retirement accounts of approximately equal

value. No spousal maintenance was requested or awarded.[1]

Husband appealed, objecting only to the trial court's awarding wife an interest in his military retirement benefits. After this court affirmed, *Gaddis v. Gaddis*, 2 CA–CV 94–0337 (memorandum decision filed March 31, 1995), the trial court issued a qualified domestic relations order in December 1995, ordering the appropriate agency to pay wife 50% of husband's "disposable military retirement pay as calculated by the United States Joint Military Service Finance Center."

Between March 1994 and June 1995, husband's gross monthly retirement pay ranged between $2,923 and $3,004. After deductions for veterans' benefits (ranging between $166 and $681) and disability benefits (averaging $964), husband's disposable retirement income ranged from $1,359 to $1,870 per month. Although it is not entirely clear from the record, it appears that husband paid wife her share of his retirement pay directly, with monthly checks ranging from $750 to $785.

In October 1995, husband obtained civil service employment with the federal government. His retiree account statement that month reflected a new $848.22 deduction for the "dual compensation offset" required by 5 U.S.C. § 5532(b), which provides:

> A retired officer of a regular component of a uniformed service who holds a [civil service] position is entitled to receive the full pay of the position, but during the period for which he receives pay, his retired or retainer pay shall be reduced to an annual rate equal to the first $2,000 of the retired or retainer pay plus one-half of the remainder, if any.

Section 5532(b) thus reduced husband's disposable retired pay to approximately $680 per month, half of which he paid to wife in November 1995. Wife then filed a petition for order to show cause, claiming that her share of husband's retirement pay should not be reduced by the "dual compensation offset."

After an unreported evidentiary hearing, the trial court ruled in April 1996 that the value of wife's one-half interest in husband's

retirement pay was "not reduced by virtue of [husband's] obtaining government employment and implication of the dual compensation offset." The court further ruled that "the original, actual value of the retirement plan, to which [wife] is entitled to one-half ... is $1,500.00 per month;" it thus ordered husband to pay wife $750 per month. The court subsequently denied husband's two motions for a new trial, reaffirmed its prior rulings, and held that "[husband's] seeking and securing Federa[l] employment alters the calculation of disposable income, but does not alter the value of [wife's] community property interest in the retirement plan at the time of the Decree, when it was distributed by the Court and it vested in her." The court again ordered husband to pay wife $750 per month, less any amounts paid directly by the government, plus arrearages totaling $4,932.68, attorney's fees, and costs. This appeal followed.

## DISCUSSION

The Uniformed Services Former Spouses' Protection Act (the Act), 10 U.S.C. § 1408, authorizes courts in community property states like Arizona to divide "disposable retired pay" as community property in dissolution proceedings. § 1408(c). The Act was a "direct response" to the decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), in which the Supreme Court held that federal law prevented states from dividing military retirement pay as community property. *Mansell v. Mansell*, 490 U.S. 581, 584, 109 S.Ct. 2023, 2026, 104 L.Ed.2d 675 (1989). *See also Edsall v. Superior Court*, 143 Ariz. 240, 693 P.2d 895 (1984). In pertinent part, the Act defines "disposable retired pay" that is subject to division as follows:

> the total monthly retired pay to which a member is entitled less amounts which—
>
> \*   \*   \*   \*   \*   \*
>
> are deducted from the retired pay of such member as a result of ... a waiver of retired pay required by law in order to receive compensation under title 5 or title 38.

---

1. Husband was ordered to pay child support, but that obligation has since terminated.

10 U.S.C. § 1408(a)(4)(B). Section 1408(e) then limits the "total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c)" to "50 percent of such disposable retired pay."

In *Mansell*, the Supreme Court held that the Act "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." [2] 490 U.S. at 594–95, 109 S.Ct. at 2032. The Court noted that the Act's grant of authority to state courts to divide military retirement pay "is both precise and limited" and that the statute expressly excludes amounts waived to receive disability benefits from the definition of "disposable retired pay." *Id.* at 588, 109 S.Ct. at 2028. According to the Court, the defined term is used "to limit specifically and plainly the extent to which state courts may treat military retirement pay as community property." *Id.* at 590, 109 S.Ct. at 2029. Moreover, the section of the Act addressed in *Mansell*, 10 U.S.C. § 1408(a)(4)(B), also excludes from the definition of "disposable retired pay" amounts waived to receive civil service compensation under title 5, U.S.C.

■ Relying on § 1408 and *Mansell*, husband contends that wife's community interest in his retirement benefits must automatically be reduced by the amount he waived in order to receive civil service compensation, despite the fact that the waiver occurred well after the final dissolution decree was entered. We disagree because Arizona law does not permit, and federal law does not require, such an outcome.

■ Husband's contention, which essentially calls for a *de facto* modification of the dissolution decree's community property allocations, is inconsistent with Arizona law. In Arizona, "[a] decree of dissolution of marriage ... is final when entered, subject to the right of appeal." A.R.S. § 25–325. Provisions in a decree "as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." § 25–327(A). As our supreme court has emphasized, "[t]he well-established rule is that property settlements are not subject to modification or termination." *DeGryse v. DeGryse*, 135 Ariz. 335, 338, 661 P.2d 185, 188 (1983). *See also Edsall*, 143 Ariz. at 248, 693 P.2d at 903 ("A property award is essentially permanent."). "The need for finality and stability in marriage and family law is great. Absent express authorization ... or a finding of 'extraordinary circumstances' as contemplated by rule 60(c)(6), a property settlement cannot be disturbed." *DeGryse*, 135 Ariz. at 338, 661 P.2d at 188. *See also Reed v. Reed*, 124 Ariz. 384, 385, 604 P.2d 648, 649 (App.1979) ("There is a compelling policy interest favoring the finality of property settlements.").

These principles strongly support the trial court's implicit refusal to essentially modify the decree in this case by reducing wife's community property interest in husband's retirement pay due to a post-decree change in circumstances unilaterally imposed by husband. This court generally has not permitted a former spouse, post-decree, "to transform retirement benefits constituting community property to [other, non-retirement] benefits constituting separate property." *McNeel v. McNeel*, 169 Ariz. 213, 215, 818 P.2d 198, 200 (App.1991). *See also In re Marriage of Crawford*, 180 Ariz. 324, 884 P.2d 210 (App.1994). In *Crawford*, a somewhat analogous case, we held that a husband could not divest his former spouse of a community property interest in accrued military retirement benefits by voluntarily relinquishing those benefits post-decree in order to receive a lump sum Special Separation Benefit, stating: "An employee spouse cannot defeat the nonemployee spouse's interest in retirement benefits by invoking a condition wholly within his or her control." *Id.* at 327, 884 P.2d at 213.

**2.** A military retiree must waive an amount of his or her retirement pay equal to the amount he or she receives in disability benefits. *See Mansell*, 490 U.S. at 584, 109 S.Ct. at 2026, 38 U.S.C. § 5305. As noted earlier, the Dual Compensation Act, 5 U.S.C. §§ 5531 to 5537, also reduces the retirement pay of an officer who obtains civil service employment with the federal government. 5 U.S.C. § 5532(b).

Neither the Act nor *Mansell* compels a different conclusion here. Nothing in the Act suggests that a court's final award of a community property interest in retirement pay must be altered when the military retiree obtains civil service employment post-decree. Although the Act precludes a state court from dividing retirement pay waived pursuant to the dual compensation offset, the trial court did not do so in this case. Rather, the 1994 dissolution decree quantified with certainty wife's community property interest in husband's military retirement benefits by awarding her one-half of those benefits "as of February 1994." *See Stine v. Stine,* 179 Ariz. 385, 388, 880 P.2d 142, 145 (App.1994) (meaning of decree determined from language used and court cannot remake language to alter existing rights or obligations). *Compare Gilliland v. Stanley,* 1997 WL 180587, at *1 (Tenn.App. April 16, 1997) (decree ordered husband to pay 35% " 'of his retirement benefits from the military when the same vests as long as [he receives] the same' ").

At the time of the decree, there was no dual compensation offset because husband had not yet obtained civil service employment. When he subsequently did, the decree already had established wife's fixed interest in the military retirement benefits. Husband deliberately frustrated the decree by voluntarily waiving retirement benefits which the court had vested in wife. He could not reduce that vested interest by unilaterally obtaining civil service employment post-decree. *Cf. Beltran v. Razo,* 163 Ariz. 505, 507, 788 P.2d 1256, 1258 (App.1990) (ex-wife's interest in former husband's military retirement pay deemed "vested property rights"). As the Missouri court of appeals stated in a similar case:

> In the present case the trial court awarded wife a percentage of disposable retired pay as calculated at the time of the decree. Wife's share in husband's pension was finally determined on the date of the decree as to amounts which had not at that time been waived and, thus, the decree did not violate *Mansell* by distributing waived amounts. The trial court finally determined wife's interest in this marital asset.

*In re Marriage of Strassner,* 895 S.W.2d 614, 618 (Mo.App.1995). Just as the divorce decree in *Strassner* "protected wife's right to receive the property she had been allocated, or its value, without specifying an improper source of funds for indemnification," the trial court's April 1996 order in this case "did not prospectively divide [waived] benefits, but instead provided a manner of enforcing the property division contained in the original decree." *Id.*

We also note that the Supreme Court emphasized in *Mansell* that "domestic relations are preeminently matters of state law," and there is no federal preemption absent evidence that it is " 'positively required by direct enactment.' " 490 U.S. at 587, 109 S.Ct. at 2028, *quoting Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (*quoting Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904)). *Mansell* presented "one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations." *Id.* Unlike this case, however, the divorce decree in *Mansell* awarded the wife a community property interest in the portion of retirement pay the husband already had waived to receive disability benefits and thus directly conflicted with the requirements of 10 U.S.C. §§ 1408(a)(4)(B) and 1408(c). *Id.* at 585–86, 109 S.Ct. at 2027.

Husband's reliance on *Gallegos v. Gallegos,* 788 S.W.2d 158 (Tex.App.1990), is similarly misplaced. On appeal from a final divorce decree, the court held, *inter alia,* that the trial court "was without authority to divide that portion of [husband's] retirement pay that was reduced in order for him to receive the full pay of his Civil Service position." *Id.* at 161. *Gallegos* is distinguishable because the trial court's decree in that case "improperly included and divided property not subject to division as part of the community estate." *Id.* In contrast, the trial court in this case did not divide a portion of retirement pay that had been waived due to civil service employment at the time of the decree.

The Tennessee court of appeals has aptly noted that "this type of post-decretal action

by military retirees has caused problems for courts and litigants across the nation in divorce cases where a percentage of military retirement benefits has been distributed as marital property." *Gilliland,* 1997 WL 180587, at *4 (also observing that, in such cases, "the military retiree unilaterally alters the equitable distribution scheme fashioned by the trial court and, in some cases, by the parties themselves"). *Mansell* suggests that Congress has expressly preempted state courts' authority to divide retirement pay that has been waived pursuant to the dual compensation offset at the time of the decree. Nonetheless, absent any indication that it is "positively required by direct enactment," we decline to require courts to disturb property allocations in final divorce decrees when a former spouse/military retiree obtains civil service employment after the decree has been entered.[3] Accordingly, we affirm the trial court's orders of April 24, 1996 and following. In our discretion, we decline wife's request for an award of attorney's fees incurred in the trial court proceedings and on appeal.

ESPINOSA and HOWARD, JJ., concur.

---

**3.** We recognize that courts in some cases not cited by the parties have reached a contrary conclusion. *See Moon v. Moon,* 795 S.W.2d 511 (Mo.App.1990); *Knoop v. Knoop,* 542 N.W.2d 114 (N.D.1996).