[No. A078423. First Dist., Div. Four. Mar. 18, 1999.]

In re the Marriage of ROBERT E. KREMPIN and PATRICIA A. KREMPIN.
ROBERT E. KREMPIN, Respondent, v.
PATRICIA A. KREMPIN, Appellant.

**[Opinion certified for partial publication.‡]**

‡Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

DeRonde & DeRonde and John A. DeRonde, Jr., for Appellant.

Hodson & Mullin and John D. Hodson for Respondent.

**OPINION**

**HANLON, P. J.**—Patricia A. Espinoza, formerly Patricia A. Krempin, appeals from postjudgment orders in the action for dissolution of her marriage to respondent Robert E. Krempin. The trial court, among other things, denied her motion to enforce a provision of the parties' stipulated judgment which gave her a share of respondent's military pension. In the published portion of this opinion we hold that this motion was denied on an erroneous ground, and remand that matter for further proceedings. In the unpublished section we reject appellant's other claims.

## I. BACKGROUND

The parties separated in June of 1991 after a marriage of almost 20 years. In June of 1993, a stipulated judgment was filed which divided their community property. The judgment provided that "[appellant] is awarded a twenty-five percent (25%) interest in [respondent's] Air Force Retirement with monthly payments to commence upon [respondent's] retirement from

the Air Force." The marital settlement agreement incorporated into the judgment added: "Said monthly payments shall be in the amount of twenty-five (25%) of the monthly payments payable to [respondent] upon his retirement. [¶] The Court in the parties' dissolution action will reserve jurisdiction to make such orders relating to these retirement benefits as are necessary to carry out this agreement."

Respondent retired from the Air Force in February of 1994. In May 1994, the parties filed a stipulation which terminated spousal support to appellant. The stipulation included provisions relating to respondent's "Air Force Retirement" which stated that the defense accounting and finance center would begin direct payment to appellant of her $327 monthly share of the pension in July 1994, and that respondent would pay that sum to appellant until those direct payments started.

Respondent was examined by the Department of Veterans Affairs (VA) in July of 1994 in connection with an application for service-connected disability compensation under title 38 of the United States Code. (See, generally, *In re Marriage of Daniels* (1986) 186 Cal.App.3d 1084, 1087 [231 Cal.Rptr. 169].) In October of 1994, the VA rated respondent 40 percent disabled, from a combination of hypertension, tinitus, gout and a left knee condition. The VA notified respondent that he would be receiving disability benefits of $403 per month beginning in November 1994. Respondent's retirement payments were reduced by the amount of disability benefits he received. (38 U.S.C. § 3105.) As a result, the monthly payments appellant received from respondent's retirement were reduced from about $330 to $230 beginning in December 1994.

In June 1996, respondent was rated 100 percent disabled from a combination of hypertension, left knee disability, gout, a hiatal hernia and prostate cancer. This disability rating was effective as of April 1996, and entitled respondent to monthly disability benefits of $2,051 beginning in May 1996. Since this amount was greater than respondent's retirement pay, the payments on his military pension stopped. Appellant's monthly payments from respondent's pension fell to about $50 per month from March to July of 1996, and then to zero in August 1996.

In August 1996, appellant filed a motion to restore the monthly "payments of $329.00 to me as previously agreed and stipulated" based on respondent's pension. Respondent objected on the ground that his pension had been eliminated by his disability benefits. The court denied appellant's motion in March 1997, citing *Mansell* v. *Mansell* (1989) 490 U.S. 581 [109 S.Ct. 2023, 104 L.Ed.2d 675].

## II. DISCUSSION

### A. *The Mansell Decision*

■ The *Mansell* case interpreted the federal Uniformed Services Former Spouses' Protection Act. (10 U.S.C. § 1408; hereafter the Former Spouses' Protection Act or Act.) The Act was enacted in response to the holding in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [101 S.Ct. 2728, 69 L.Ed.2d 589], that federal law prevented state courts from treating military retirement pay as community property. (*Mansell* v. *Mansell, supra,* 490 U.S. at p 584 [109 S.Ct. at p. 2026].) The act authorizes a state court to treat "disposable retired pay . . . as property of the [military] member and his spouse in accordance with the law of the jurisdiction of such court." (10 U.S.C. § 1408(c)(1).) However, " 'disposable retired pay' " is defined as "the total monthly retired pay to which a member is entitled" less certain amounts, including amounts that "are deducted from the retired pay of such member . . . as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38." (10 U.S.C. § 1408(a)(4)(B).)[1] That is to say an application and approved rating of service-connected disability operates as a waiver of a percentage or all of a service member's retired pay.

*Mansell* held that under these "plain and precise" statutory terms (*Mansell* v. *Mansell, supra,* 490 U.S. at p. 592 [109 S.Ct. at pp. 2030-2031]) retirement pay waived by the retiree to receive disability benefits could not be treated by state courts as "property divisible upon divorce" (*id.* at pp. 583, 595 [109 S.Ct. at pp. 2025, 2032]). The court acknowledged that waivers of retirement pay to obtain disability benefits "are common" because the disability benefits are tax exempt (*id.* at p. 584 [109 S.Ct. at 2026]), and that excepting such benefits from marital property divisions "may inflict economic harm on many former spouses" (*id.* at p. 594 [109 S.Ct. at p. 2032]). However, Congress was "free to change" this result if it so desired. (*Ibid.*)

Here, the trial court observed that the statute had not been so amended, and thus rejected appellant's motion on the ground that "Congress has tied this court's hands."

### B. *Out-of-state Precedents*

In the years since *Mansell* was decided, postjudgment waivers of retirement pay like the one at issue here have " 'caused problems for courts and litigants across the nation in divorce cases where a percentage of military

---

[1] References herein to respondent's "retirement," "retirement pay" or "pension" are to "total" rather than "disposable" retired pay within the meaning of this statute.

retirement benefits has been distributed as marital property.'" (*In re Marriage of Gaddis* (1997) 191 Ariz 467 [957 P.2d 1010, 1014].) While the situation has not yet been addressed in a published California case, there is a "growing trend" elsewhere "to ensure that former spouses' property interests are protected in the event of a future award of VA disability [to] . . . the service member." (Fenton, *Uniformed Services Former Spouses' Protection Act and Veterans' Disability and Dual Compensation Act Awards* (1998) Feb. 1998 Army Law. 31, 33 (hereafter Fenton).) Courts in other states have protected the nonmilitary spouse's interest through various means.

Some courts have found that the waiver of retirement pay and resulting reduction in the pension payment to the nonmilitary spouse were changed circumstances which permitted reassessment of support payments or redistribution of marital property. (E.g., *Kramer* v. *Kramer* (1997) 252 Neb. 526 [567 N.W.2d 100, 113]; *Clauson* v. *Clauson* (Alaska 1992) 831 P.2d 1257, 1260-1261; *Torwich* v. *Torwich* (1995) 282 N.J.Super. 524 [660 A.2d 1214, 1216]; *McMahan* v. *McMahan* (Fla.Dist.Ct.App. 1990) 567 So.2d 976, 980; cf. *Jennings* v. *Jennings* (1998) 91 Wn.App. 543 [958 P.2d 358, 360-362].)

In some cases the courts have enforced judgments which provided that the military spouse would take no action to diminish his or her retirement pay, and would indemnify the nonmilitary spouse for any such diminution. (E.g., *Abernethy* v. *Fishkin* (Fla. 1997) 699 So.2d 235, 239-240; *Owen* v. *Owen* (1992) 14 Va.App. 623 [419 S.E.2d 267, 269-271]; *In re Marriage of Strassner* (Mo.Ct.App. 1995) 895 S.W.2d 614, 617-618; see also *Hisgen* v. *Hisgen* (1996) 1996 S.D. 122 [554 N.W.2d 494, 497-498]; *In re Marriage of Jennings, supra,* 958 P.2d at p. 361, fn. 5; cf. *Kramer* v. *Kramer, supra,* 567 N.W.2d at p. 110.) The nonmilitary spouse is given the benefit of the original bargain or order with respect to retirement pay, even if the military spouse's disability benefits will be a source of the indemnity payments. Because the military spouse is free to satisfy the indemnity obligation with assets other than the disability benefits, there is no division of those benefits in contravention of *Mansell.* (*Abernethy* v. *Fishkin, supra,* at p. 240; *Owen* v. *Owen, supra,* at p. 270; *In re Marriage of Strassner, supra,* at p. 618.)

. This same result has been reached even where there was no express indemnity agreement. In *McHugh* v. *McHugh* (1993) 124 Idaho 543 [861 P.2d 113, 115], where the parties had agreed that the nonmilitary spouse's monthly retirement payments would not be modified "'for any reason'" other than cost-of-living increases, and the military spouse then waived a portion of his retirement to obtain disability benefits, the court increased the nonmilitary spouse's percentage of the remaining retirement to maintain her original level of payments. In *Price* v. *Price* (1996) 325 S.C. 379 [480

S.E.2d 92, 93], the military spouse entered into a nonmodifiable agreement to remain " 'directly responsible' " for monthly payments of a percentage of his "gross monthly military retirement pay," an amount that included disability pay. The court held that the military spouse "could not unilaterally deprive [the non-military spouse] of the property granted to her pursuant to the Agreement" by waiving a portion of his retirement pay to increase his disability benefits. (*Id.* at p. 93.) The court reasoned that the military spouse had "breached his obligations" under the agreement and should not be permitted to profit "from his own wrong." (*Id.* at p. 94.) Similarly, in *Dexter v. Dexter* (1995) 105 Md.App. 678 [661 A.2d 171, 174-175], the court used a breach of contract theory to award the nonmilitary spouse past sums waived by the military spouse to obtain disability benefits.

The case in this last line which most closely parallels the one before us is *In re Marriage of Gaddis, supra,* 957 P.2d 1010. The judgment in *Gaddis* simply awarded the nonmilitary spouse " 'one half of [the] military retirement benefits as of February 1994,' " without any provision ·concerning indemnification, modification or direct responsibility on the part of the military spouse. (*Ibid.*) The military spouse later obtained civil service employment, and thereby waived a portion of his retirement pay by virtue of a "dual compensation offset" like the waiver required to obtain disability benefits. (*Id.* at pp. 1011-1012, citing 5 U.S.C. § 5532(b), and 10 U.S.C. § 1408(a)(4)(B).) The military spouse was ordered to continue paying the nonmilitary spouse the same monthly sum he originally owed before the waiver.

"Although the [Former Spouses' Protection] Act precludes a state court from dividing retirement pay waived pursuant to the dual compensation offset, the trial court did not do so in this case. Rather, the 1994 dissolution decree quantified with certainty wife's community property interest in husband's military retirement benefits by awarding her one-half of those benefits 'as of February 1994.' . . . [¶] At the time of the decree, there was no dual compensation offset because husband had not yet obtained civil service employment. When he subsequently did, the decree already had established wife's fixed interest in the military retirement benefits. Husband deliberately frustrated the decree by voluntarily waiving retirement benefits which the court had vested in wife. He could not reduce that vested interest by unilaterally obtaining civil service employment post-decree. . . ." (*In re Marriage of Gaddis, supra,* 957 P.2d at p. 1013, citations omitted.)

The *Gaddis* court distinguished *Mansell* on its facts. The military spouse in *Mansell* had retired and was receiving both retirement pay and disability benefits when the divorce judgment was entered. The judgment awarded the

nonmilitary spouse 50 percent of the retirement pay, including the portion that had been waived to obtain the disability benefits. This division of disability benefits in *Mansell* was impermissible because it "directly" conflicted with the Former Spouses' Protection Act:

"[T]he Supreme Court emphasized in *Mansell* that 'domestic relations are preeminently matters of state law,' and there is no federal preemption absent evidence that it is ' "positively required by direct enactment." ' . . . *Mansell* presented 'one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations.' . . . Unlike this case, however, the divorce decree in *Mansell* awarded the wife a community property interest in the portion of retirement pay the husband *already had waived* to receive disability benefits and thus directly conflicted with the requirements of 10 U.S.C. §§ 1408(a)(4)(B) and 1408(c)." (*In re Marriage of Gaddis, supra,* 957 P.2d at p. 1013, italics added, citations omitted.)

There is no such "direct" conflict when the waiver of retirement pay occurs *after the judgment* and new payments are ordered to enforce what had been a proper division of marital property, even if the payments account for the military spouse's receipt of new benefits or pay which could not have been divided in the first instance. (*In re Marriage of Gaddis, supra,* 957 P.2d at p. 1013; see also *Abernethy* v. *Fishkin, supra,* 699 So.2d at pp. 239-240 [*Mansell* distinguishable if judgment did not divide disability].) The order need only avoid " 'specifying an improper source of funds' " for the payments. (*In re Marriage of Gaddis, supra,* 957 P.2d at p. 1013, quoting *In re Marriage of Strassner, supra,* 895 S.W.2d at p. 618; *Abernethy* v. *Fishkin, supra,* 699 So.2d at p. 240.) *Mansell* does not apply to postjudgment waivers of retirement pay because it held only that disability benefits could not be divided "*upon* divorce." (*Mansell* v. *Mansell, supra,* 490 U.S. at pp. 583, 595 [109 S.Ct. at pp. 2025-2026, 2032], italics added.)

Thus, "[a] majority of state courts," on one theory or another, "take equitable action to compensate the former spouse" when that spouse's share of retirement pay is reduced by the other's postjudgment waiver. (Fenton, *supra,* Feb. 1998 Army Law. at p. 32.) A review of the out-of-state precedents confirms that this result is nearly universal.

## C. *The Daniels Case*

Prior to *Mansell,* the treatment of military disability benefits in California divorce proceedings was governed by *Casas* v. *Thompson* (1986) 42 Cal.3d 131 [228 Cal.Rptr. 33, 720 P.2d 921]. (See *In re Marriage of Daniels, supra,* 186 Cal.App.3d at pp. 1090-1092.) *Casas* held that the Former Spouses'

Protection Act did not preclude states from treating the military spouse's total retirement pay, including disability benefits, as divisible marital property. (*Casas* v. *Thompson, supra,* 42 Cal.3d at pp. 143-151.) This holding was overruled in *Mansell.* (*In re Marriage of Mansell* (1989) 217 Cal.App.3d 219, 226 [265 Cal.Rptr. 227].) However, at least one pre-*Mansell* decision in California, *In re Marriage of Daniels, supra,* 186 Cal.App.3d 1084, is still relevant to the present appeal.

The military spouse in *Daniels* had retired with partial disability before the parties separated, and by the time their interests in his retirement pay were determined, he had waived the remainder of his pension to obtain additional disability benefits. The court affirmed an award of 50 percent of the disability benefits to the nonmilitary spouse,[2] rejecting, in light of *Casas,* an argument that this division was preempted by the Former Spouses' Protection Act. (*In re Marriage of Daniels, supra,* 186 Cal.App.3d at pp. 1089-1092.) The court went on to indicate, in dicta pertinent here, that even if federal law prevented treatment of the disability benefits as community property, "we would conclude . . . that husband would receive his separate property monthly payment [of disability benefits] from the federal government as a resulting trustee of wife's share." (*Id.* at p. 1092.)

In support of this conclusion, the court cited *In re Marriage of Mastropaolo* (1985) 166 Cal.App.3d 953 [213 Cal.Rptr. 26], which in turn relied on the reasoning of *In re Marriage of Becker* (1984) 161 Cal.App.3d 65 [207 Cal.Rptr. 392]. In *Becker,* the resulting trust doctrine was used to divide state employee death benefits between a former and surviving spouse, despite an election by the surviving spouse which appeared to defeat the former spouse's interest:

" 'Our decision in *Becker* was based on the . . . principle of law . . . that one spouse may not be permitted by exercise of a power wholly within that spouse's control to transmute what would otherwise be the community property of both spouses into his or her separate property. . . .

" '. . . [The surviving spouse] was entitled to receive the accumulated retirement contributions if she so elected, and the fact that she is to receive a monthly allowance rather than the accumulated contribution is the product of her own choice. In essence, the surviving spouse has traded her right to receive the accumulated retirement contributions, out of which former wife

---

[2]This award covered the disability benefits the military spouse received under chapter 61, title 10 of the United States Codes upon his retirement, as well as the additional title 38 disability benefits he obtained after his retirement. (*In re Marriage of Daniels, supra,* 186 Cal.App.3d at p. 1087.) All other references in this opinion to "disability benefits" are to solely to benefits payable under title 38.

would have been entitled to reimbursement of her community share . . . for a monthly allowance. . . .

" 'While the surviving spouse was statutorily entitled to make the choice she did and committed no wrong in so doing, she has effectively utilized former wife's right to reimbursement to acquire, in part, her monthly allowance. The situation presented is a classic one for the imposition of a resulting trust. When one person furnishes the money or other thing of value with which property is acquired and title to the property is taken in the name of another, absent the intention of the one to confer a gift upon the other, the titleholder is a trustee upon a resulting trust of the property for the benefit of the person who furnished the money or other thing of value by which the property was acquired. . . . Where only a portion of the acquisition price has been furnished, a resulting trust may be established in a fractional interest in the property on a *pro tanto* basis. . . .

" 'The same logic should apply here. So far as we are aware the federal courts recognize the resulting trust doctrine in appropriate circumstances, and we are confident they would find it appropriate here to further the congressional intent to protect spouses of service personnel that is manifest in [the Former Spouses' Protection Act].' . . .

"Under [the Former Spouses' Protection Act], at the time the military spouse becomes eligible for longevity retirement the nonmilitary spouse's right to share in the retirement benefits becomes fully recognized, and it was the specific purpose of [the Former Spouses' Protection Act] to recognize and protect the rights of military spouses. We are confident federal law would not be interpreted to permit one spouse at his or her election to defeat the other spouse's fully recognized rights any more than California law does." (*In re Marriage of Daniels, supra,* 186 Cal.App.3d at pp. 1092-1093, italics omitted.)

D. *Arguments and Analysis*

Appellant advances an array of arguments for restoration of her original payments based on respondent's pension. Her principal contentions appear to be: (1) that respondent committed fraud by agreeing to divide retirement pay which he intended to waive to obtain disability benefits, and that this fraud justifies reopening of the property division under the reasoning of cases like *Clauson* v. *Clauson, supra,* 831 P.2d at pp. 1260-1261; (2) that respondent breached the implied covenant of good faith and fair dealing when he applied for disability benefits, and that this breach can be redressed because the judgment reserved jurisdiction over respondent's retirement; and

(3) that respondent holds the disability benefits he received by waiving appellant's share of his retirement pay in a constructive trust for her benefit.

We cannot entirely subscribe to any of these theories because they are all premised on allegations of wrongful conduct on respondent's part. (See, e.g., 11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 297, p. 1132 [distinguishing constructive trusts which defeat or prevent a "wrongful act" from resulting trusts which "carr[y] out the inferred intent of the parties"].) There is no evidence and no finding of any such wrongful conduct in the record. Respondent was entitled to apply for disability benefits and could not justly be accused of any bad faith in so doing. In this respect we agree with cases like *In re Marriage of Daniels, supra,* 186 Cal.App.3d at pages 1084 and 1092, and *Kramer* v. *Kramer, supra,* 567 N.W.2d at page 110, which ascribe no fault to the military spouse's pursuit of disability benefits, and disagree with decisions like *Price* v. *Price, supra,* 480 S.E.2d at page 94, which characterize this pursuit as wrongful conduct. We note also that appellant's motion was filed over a year after her monthly payments were first reduced. Thus, even if respondent had committed fraud as appellant asserts, it would have been too late to reopen the property division on that ground by the time the motion was filed. (Fam. Code, § 2122, subd. (a) [motion to set aside judgment for fraud must be brought within one year after date fraud should have been discovered].)[3]

 In our view, appellant's claim does not hinge on any fault of respondent, but rather on the scope of the judgment's reservation of jurisdiction and the agreements in the judgment and the postjudgment stipulation with respect to appellant's payments. If the reservation of jurisdiction and the payment provisions can be interpreted to apply in the event of a waiver of retirement pay, the court has the power to grant the relief appellant seeks. The court never reached those issues of interpretation because it concluded that *Mansell* was controlling. Since those issues may be ones of fact, a remand for further proceedings is required. Our analysis of these points is as follows.

---

[3]Certain of appellant's other contentions merit even less discussion. Appellant contends that respondent violated her right to "due process" by applying for disability benefits without giving her notice and an opportunity to object. However, there is no denial of due process without state action. (*Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 359 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].) Appellant asserts in passing and without authority that the result was a violation of "equal protection." We deem the point abandoned for lack of proper argument. (See *Ochoa* v. *Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [72 Cal.Rptr.2d 232].) Appellant submits that respondent tortiously interfered with her contractual rights or prospective economic advantage. We decline to address these theories because they are improperly advanced for the first time in appellant's reply brief. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 616, pp. 647-648.) Appellant argues that respondent does not, in fact, have any service-related disabilities, but we have no reason or authority to second-guess the VA's disability determination.

Respondent appears to concede that appellant would have an enforceable claim if the judgment here, as in cases like *Abernethy* v. *Fishkin, supra,* 699 So.2d at pages 239-240; *Owen* v. *Owen, supra,* 419 S.E.2d at pages 269-271; and *In re Marriage of Strassner, supra,* 895 S.W.2d 614, 617-618, had included an agreement on his part to indemnify appellant in the event he waived retirement pay to which she was entitled. Since there is no such indemnification provision in the judgment or the postjudgment stipulation, respondent submits that there is no basis for awarding appellant any payments. The implication is that appellant's former counsel committed malpractice by failing to insist on an indemnity. (See Sullivan, *Military Pension Division: Crossing The Minefield* (1997) 31 Fam.L.Q. 19, 20, 27 (hereafter Sullivan), noting risk of malpractice and suggesting that "careful drafting of a marital settlement agreement" like the one in *Owen* "is the key to indemnifying the nonmilitary spouse"]; see also Block, *Reduction in Disposable Retired Pay Triggered By Receipt of VA Disability Pay: A Basis For Reopening A Judgment Of Divorce?* (1995) Oct. 1995 Army Law. 28 [because waivers of retirement pay are "foreseeable, practitioners must take additional steps to insulate former spouses"].)

However, while appellant's claim would be stronger if the judgment or stipulation included an indemnity provision, the absence of an indemnity agreement is not necessarily fatal to her position. Cases like *In re Marriage of Gaddis, supra,* 957 P.2d 1010, have protected the nonmilitary spouse in the absence of an indemnity provision where the parties' agreement otherwise indicates that such protection was intended, and the language of the agreement in this case at least arguably evidences such an intent.

On the one hand, the judgment awards appellant a percentage of respondent's "Air Force Retirement," and the stipulation refers to "said sum" as an amount to be paid by the "Defense Accounting and Finance Center." This language covers only retirement pay and not disability benefits because disability benefits are paid by the VA rather than the defense accounting and finance center. (See *Loveland* v. *Loveland* (1988) 147 Wis.2d 605 [433 N.W.2d 625]; Gilbert, *A Family Law Practitioner's Road Map to the Uniformed Services Former Spouses Protection Act* (1992) 32 Santa Clara L.Rev. 61, 69.) This suggests that the parties' understanding did not extend to disability benefits.

On the other hand, the stipulation identifies appellant's interest in the "Air Force Retirement" as a specific dollar amount ($327) owed to her monthly beginning in May 1994. In the *Gaddis* case, a similar reference to a percentage amount owed as of a particular date was deemed to "quantif[y] with certainty wife's community property interest in husband's military retirement benefits," which could not be altered by the husband's subsequent

waiver. (*In re Marriage of Gaddis, supra,* 957 P.2d at p. 1013.) The overriding intention in *Gaddis*, in other words, was to provide the military spouse with a specific sum of money each month. Although this amount was defined as a percentage of the military spouse's retirement, the payment did not necessarily have to come from that source. The same understanding may have existed here. Indeed, the case for this interpretation is stronger here than in *Gaddis*, because the stipulation notes that the defense accounting and finance center would not begin paying appellant until July of 1994, and directs respondent to make the payments *himself* until that time. This suggests an understanding that respondent was ultimately responsible for insuring specific monthly payments.

Appellant's position is further strengthened by the judgment's reservation of jurisdiction. The language of the reservation is inconclusive. The reservation appears after references to monthly payments of a percentage of respondent's "Air Force Retirement," and simply reserves the power "to make such orders relating to these retirement benefits as are necessary to carry out this agreement." However, the very fact that the parties' agreement includes a reservation of jurisdiction on this subject suggests that they may have anticipated future contingencies such as waivers of retirement pay which might call for new arrangements to preserve the original bargain. This interpretation would be consistent with commentaries which advise including a reservation of jurisdiction in the marital settlement agreement as a way of protecting the nonmilitary spouse from future waivers of retirement pay. (Cushing, *The Ten Commandments of Military Divorce: Representing the Nonmilitary Spouse Part 2* (1995) 69 Fla. Bar. J. 84, 85; Sullivan, *supra,* 31 Fam. L.Q. at p. 40.)

Another provision in the mix is the marital settlement agreement's directive that "[t]he agreement and each of its provisions will be interpreted fairly, simply, and not strictly for or against either party." This language may support appellant's contention that the agreement was not strictly limited to retirement payments as opposed to disability benefits, but was intended instead simply to provide her with a certain level of income.

Since the provisions of the judgment and stipulation are reasonably susceptible to both sides' constructions, the parties may offer extrinsic evidence to support their positions. (See *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *In re Marriage of Trearse* (1987) 195 Cal.App.3d 1189, 1192-1195 [241 Cal.Rptr. 257].) In the event such evidence is introduced and is in conflict, the issue of interpretation will be one of fact. (*Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d at p. 866, fn. 2.) As a consequence, the issue cannot be resolved as matter of law in this appeal.

If the trial court were to conclude that the parties intended for appellant to continue to receive her original share of respondent's retirement pay even if he waived all or a portion of that pay to obtain disability benefits, the *Mansell* case would not prevent the court from giving appellant the benefit of her bargain on the resulting trust theory set forth in *In re Marriage of Daniels, supra,* 186 Cal.App.3d at pp. 1092-1093. (11 Witkin, Summary of Cal. Law, *supra,* Equity, § 297, p. 1132 [resulting trust may be imposed to effectuate parties' intent].)[4] One commentary has opined that *Mansell* "raises doubt about the continued validity" of the reasoning in *Daniels* (*State-By-State Analysis of the Divisibility of Military Retired Pay* (1996) July 1996 Army Law. 22, 23 [citing *In re Marriage of Mastropaolo, supra,* 166 Cal.App.3d 953, on which *Daniels* relied]), and we have found no military pension waiver case after *Mansell* that has applied the resulting trust doctrine. *Daniels* itself may no longer be viable because the waiver of retirement pay preceded the property division in that case, but *Mansell* did not derogate any equitable doctrine. Impression of a resulting trust on the proceeds of retirement pay previously awarded to the nonmilitary spouse would be consistent with the nationwide practice of equitably protecting those spouses against postjudgment waivers of that pay.

The resulting trust would adhere to money received as disability benefits, but there would be no division of those benefits in violation of federal law if respondent remained free to satisfy the obligation with other assets. (*Abernethy* v. *Fishkin, supra,* 699 So.2d at p. 240; *Owen* v. *Owen, supra,* 419 S.E.2d at p. 270; *In re Marriage of Strassner, supra,* 895 S.W.2d at p. 618; *In re Marriage of Gaddis, supra,* 957 P.2d at p. 1013.) *Mansell* would be distinguished because there was no division of disability benefits in the parties' judgment herein. (*Abernethy* v. *Fishkin, supra,* 699 So.2d at pp. 239-240; *In re Marriage of Gaddis, supra,* 957 P.2d at p. 1013.)

We note finally that if the court were to rule in appellant's favor then respondent would be faced with a large arrearage in payments. The situation would be analogous to that presented in a proceeding to divide a pension which was omitted from the judgment after substantial pension payments have been received (see *Casas* v. *Thompson, supra,* 42 Cal.3d at pp. 151-152), and some of the same principles that apply in the latter situation ought also to apply here. In determining respondent's obligation for past payments, the court should consider "any facts relevant to the fairness of such payments," including the defense of laches, and "may 'tailor the form of that award' to avoid placing an undue burden" on respondent. (*Id.* at p. 152.)

---

[4]Because the resulting trust doctrine would be a sufficient foundation for such a decision, we need not consider whether, as *Daniels* also suggests, respondent could be penalized for an improper transmutation of community property. (See Fam. Code, §§ 1100, subd. (e), 2102 [fiduciary duties with respect to community property terminate when property is divided or distributed].)

III. OTHER CONTENTIONS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. DISPOSITION

The order filed March 13, 1997, denying appellant's motion for payments based on the military pension is reversed, and that matter is remanded for further proceedings consistent with this opinion. The other orders filed March 13, 1997, and the order filed March 17, 1997, are affirmed. The parties shall bear their own costs on appeal.

Poché, J., and Sepulveda, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 3, 1999.

---

*See footnote, *ante*, page 1008.