No. 2--02--0442

    

__________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

___________________________________________________________________

In
 
re
 MARRIAGE OF  ) Appeal from the Circuit Court 

SUSAN NIELSEN,  ) of Du Page County.

f/k/a Susan Moller-Nielsen,  )

f/k/a Susan Magrini,  )

  )

Petitioner-Appellee,    ) 

  )

and  ) No. 86--MR--238

  )

  ) Honorable 

MARK LOUIS MAGRINI,  ) Brian R. McKillip and

  ) Hollis L. Webster,

Respondent-Appellant.  ) Judges, Presiding. 

___________________________________________________________________

 

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The respondent, Mark Magrini, appeals from the November 3, 2000, and April 30, 2002, orders of the circuit court of Du Page  County, awarding the petitioner, Susan Nielsen, a portion of his military disability benefits.  We affirm in part and reverse in part and remand the cause for additional proceedings.

      The facts relevant to the disposition of this case are as follows.  The parties' judgment for dissolution of marriage was entered on April 1, 1985, in Clarion County, Pennsylvania.   On May 8, 1986, the judgment for dissolution of marriage was enrolled in the circuit court of Du Page County.   The judgment for dissolution of marriage incorporated a marital settlement agreement dated August 6, 1984.  The parties could not reach an agreement concerning Mark's military pension at that time, however, and expressly reserved that issue for a future determination by the trial court. 

On November 25, 1987, the parties subsequently entered into an agreed order concerning Mark's military pension.  The November 25, 1987, agreement provided as follows:

"The military pension of Mark Louis Magrini shall be distributed 25% to Susan Moller-Nielsen, 75% to Mark Louis Magrini to be paid if and when said pension is received.  Said 25% shall be paid directly to Susan Moller-Nielsen pursuant to the provisions of 71 U.S.C. 10, Section 1408 and shall be 25% of the gross retired or retainer pay due Mark Louis Magrini ***, Susan Moller-Nielsen to include in her income and pay all taxes on any sums received."

Section 1408 of chapter 71 of Title 10 of the United States Code, otherwise known as the Uniformed Services Former Spouses' Protection Act (USFSPA) (10 U.S.C. §1408 (2000)), authorizes state courts to treat as community property a party's "disposable retired or retainer pay."  Disposable retired or retainer pay is defined by the USFSPA as the total monthly retired pay to which a member is entitled minus certain deductions.  10 U.S.C. §1408(a)(4) (2000).  Among the amounts required to be deducted from the total pay are those amounts which are waived by the retiree in order to receive veterans' disability benefits under chapter 11 of Title 38 or chapter 61 of Title 10 of the United States Code.  10 U.S.C. §§1408(a)(4)(B), (a)(4)(C) (2000).  Additionally, the USFSPA creates a payment mechanism under which the federal government will make direct payments to the nonmilitary former spouse who presents, to the Secretary of the relevant military service, a state court order granting her a portion of the military spouse's disposable retired or retainer pay.  10 U.S.C. §1408(e)(1) (2000). 

On May 1, 1993, Mark retired from the military, after 20 years of service, at the rank of Major.  Mark would have been eligible to receive retired or retainer pay in the amount of $2,185 per month.  However, at the time of Mark's retirement, the Veteran's Administration (VA) reviewed his medical records and determined that he was 10% disabled.  This determination was based on Mark suffering migraine headaches and having high blood pressure and back and knee problems.  As such, Mark elected to receive monthly disability benefits under Title 38, which reduced his monthly retired or retainer pay by 10%, or to $1,966.50 per month.
(footnote: 1)  Pursuant to the parties' settlement agreement and in accordance with the USFSPA, Susan started receiving her monthly payments.  The payments reflected 25% of Mark's disposable retired or retainer pay of $1,966.50.  

On July 7, 1996, the Veteran's Administration reviewed Mark's records again upon Mark's request and adjudged him 60% disabled.  Consequently, Mark's monthly disability benefits increased, but his  retirement pay was reduced another 50%.  Susan's monthly check reflecting her 25% share of Mark's retired or retainer pay was accordingly reduced.  On July 28, 1999, Susan filed a petition seeking to enforce the November 25, 1987, agreement.  The petition alleged that Susan was not receiving the full amount to which she was entitled to under the parties' agreement. 

On October 5, 2000, following a hearing, the trial court ruled that Susan was entitled to an amount worth 25% of Mark's military pension as it existed on the date he retired.  On November 3, 2000, the trial court entered a written order reflecting its oral ruling of October 5, 2000.  On April 30, 2002, the trial court assessed Susan's damages to date as $14,515.80 and ordered that, going forward, Mark should withhold and pay to Susan 22.5% of his monthly retired or retainer pay and 22.5% of his disability pay.  Mark thereafter filed a timely notice of appeal.  

On appeal, Mark argues that the trial court erred in awarding Susan a portion of his military disability benefits.  In order to address the merits of Mark's argument, we must take a closer look at the USFSPA, why it was enacted, and the progeny of cases that have followed the USFSPA's enactment.

Congress enacted the USFSPA in 1982, in direct response to the United States Supreme Court's decision in 
McCarty v. McCarty
, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981).  The 
McCarty
 Court held that federal law preempted the application of state community property or equitable distribution laws to a military serviceman's retirement pay.  
McCarty
, 453 U.S. at 233, 69 L. Ed. 2d at 606, 101 S. Ct. at 2741-42.  It is clear that in enacting the USFSPA, Congress intended to remove the federal preemption found to exist by the 
McCarty
 Court and permit state and other courts of competent jurisdiction to apply their laws in determining whether military retired or retainer pay should be divisible upon a dissolution of marriage. 

Several years later, despite the unambiguous language of the USFSPA specifically prohibiting the division of a military serviceman's disability benefits, the divisibility of such benefits was called into question.  The Supreme Court in 
Mansell v. Mansell
, 490 U.S. 581, 594-95, 104 L. Ed. 2d 675, 689, 109 S. Ct. 2023, 2031  (1989), clarified this issue.  In 
Mansell
, the husband retired from the Air Force prior to entering into a settlement agreement with his wife.  
Mansell
, 490 U.S. at 585-86, 104 L. Ed. 2d at 683, 109 S. Ct. at 2027.  The ensuing settlement agreement entered into by the parties provided that the wife would receive 50% of the husband's total military retirement pay, including those portions waived so that he could  receive veteran's disability benefits.  
Mansell
, 490 U.S. at 585-86, 104 L. Ed. 2d at 683, 109 S. Ct. at 2027.  After the parties divorced, the husband filed a petition to modify that portion of the judgment for dissolution that incorporated the settlement agreement provision that required him to share his total retirement pay.  
Mansell
, 490 U.S. at 586, 104 L. Ed. 2d at 683, 109 S. Ct. at 2027.  The trial court denied the motion, but the Supreme Court ultimately reversed, finding the plain language of the USFSPA dispositive and holding:

"The Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits."  
Mansell
, 490 U.S. at 594-95, 104 L. Ed. 2d at 689, 109 S. Ct. at 2032.

In so ruling, however, the Supreme Court noted the harsh effect of its ruling and expressed fear that its literal interpretation of the USFSPA might inflict economic harm on many former spouses.  
Mansell
, 490 U.S. at 594, 104 L. Ed. 2d at 689, 109 S. Ct. at 2032.  It invited Congress to pass new legislation.  
Mansell
, 490 U.S. at 594, 104 L. Ed. 2d at 689, 109 S. Ct. at 2032.

Following 
Mansell
, several jurisdictions, including Illinois, have conformably ruled that military disability pay is not subject to division.  See 
In re Marriage of Strunck
, 212 Ill. App. 3d 76, 77-78 (1991); see also 
In re Marriage of Franz
, 831 P.2d 917, 918 (Colo. App. 1992); 
Fondren v. Fondren
, 605 So. 2d 571, 572 (Fla. App. 1992)
; 
Jones v. Jones
, 7 Haw. App. 496, 499, 780 P.2d 581, 584 (1989); 
Bewley v. Bewley
, 116 Idaho 845, 846, 780 P.2d 596, 597 (1989); 
Davis v. Davis
, 777 S.W.2d 230, 232 (Ky. 1989); 
Harmon v. Harmon
, 617 So. 2d 1373, 1377 (La. App. 1993); 
Keen v. Keen
, 194 Mich. App. 72, 74, 486 N.W.2d 105, 106 (1992); 
In re Marriage of Murphy
, 261 Mont. 363, 367, 862 P.2d 1143, 1145 (1993)
.  

However, a growing number of courts have found 
Mansell
 to be inapplicable given certain language contained in the judgment for dissolution.  For example, several courts have enforced judgments which provided that the military spouse would take no action to diminish his or her retirement pay and would indemnify the nonmilitary spouse for any such diminution.  See 
Abernethy v. Fishkin
, 699 So. 2d 235, 239-240 (Fla. 1997);
 
In re Marriage of Strassner
, 895 S.W.2d 614, 617-18 (Mo. App. 1995); 
Owen v. Owen
, 14 Va. App. 623, 626, 419 S.E.2d 267, 269 (1992).  These courts reason that because the military spouse is free to satisfy the indemnity obligation with assets other than the disability benefits, there is no division of disability benefits in contravention of 
Mansell
.  
Abernethy
, 699 So. 2d at 240;
 
Strassner
, 895 S.W.2d at 618; 
Owen
, 14 Va. App. at 626, 419 S.E.2d at 269.  In 
Abernethy
, the Florida Supreme Court explained:

"[W]e hold that while federal law prohibits the division of disability benefits, it does not prohibit spouses from entering into a property settlement agreement that awards the non-military spouse a set portion of the military spouse's retirement pay.  Nor does it exclude indemnification provisions ensuring such payments, so long as veteran's disability payments are not the source of such payments."  
Abernethy
, 699 So. 2d at 240.

This same result has been reached even where there was no express indemnity agreement.  See 
McHugh v. McHugh
, 124 Idaho 543, 545, 861 P.2d 113, 115 (App. 1993).  In 
McHugh
, the parties had agreed that the husband's monthly retirement payments would not be modified for any reason other than cost-of-living increases.  
McHugh
, 124 Idaho 543, 861 P.2d 113.  The husband thereafter waived a portion of his retirement pay to obtain disability benefits.  
McHugh
, 124 Idaho at 544, 861 P.2d at 114.  The trial court granted, and the reviewing court affirmed, an increase in the wife's percentage of the husband's disposable retired or retainer pay in order to maintain the wife at her original level of payments.  
McHugh
, 124 Idaho at 545, 861 P.2d at 115.       

There are even several cases in this growing trend that  closely parallel the facts of the case herein.  See 
In re Marriage of Gladdis
, 191 Ariz. 467, 470, 957 P.2d 1010, 1013 (App. 1997); see also 
In re Marriage of Krempin
, 70 Cal. App. 4th
 
1008, 1020-21, 83 Cal. Rptr. 2d 134, 142-43 (1999); 
Johnson v. Johnson
, 37 S.W.3d 892, 897-88 (Tenn. 2001).  In the first of those cases, 
Gladdis
, the judgment for dissolution awarded the wife "one half of [the husband's] military retirement benefits as of February 1994."  
Gladdis
, 191 Ariz. at 467, 957 P.2d at 1010.  The judgment did not contain any provision concerning indemnification, modification, or direct responsibility on the part of the husband.  
Gladdis
, 191 Ariz. at 467, 957 P.2d at 1010.  The husband later obtained civil service employment, which required him to waive a portion of his retirement pay in order to avoid dual compensation.  
Gladdis
, 191 Ariz. at 468, 957 P.2d at 1011.  Such a waiver is comparable to the waiver required to obtain disability benefits. 
 The wife's entitlement was thereby reduced and she petitioned the trial court.  
Gladdis
, 191 Ariz. at 468, 957 P.2d at 1011.  

The trial court ordered the husband to continue paying the wife the same monthly sum he owed before the waiver.  
Gladdis
, 191 Ariz. at 468, 957 P.2d at 1011.  The reviewing court affirmed, reasoning that at the time of the judgment for dissolution, there was no dual compensation offset because the husband had not yet obtained civil service employment.  
Gladdis
, 191 Ariz. at 470, 957 P.2d at 1013.  When he subsequently did, the decree had already established the wife's fixed interest in the military retirement benefits.  
Gladdis
, 191 Ariz. at 470, 957 P.2d at 1013.  By voluntarily waiving retirement benefits, the husband deliberately frustrated the judgment for dissolution.  
Gladdis
, 191 Ariz. at 470, 957 P.2d at 1013.  The reviewing court determined that the order need only avoid specifying an improper source of funds for the payments to be in conformity with 
Mansell
.  
Gladdis
, 191 Ariz. at 470, 957 P.2d at 1013.

The 
Johnson
 and 
Krempin
 courts reached a similar result.  In 
Johnson
, the parties' judgment for dissolution provided that the wife would receive "one half of all retirement benefits due the husband."  
Johnson
, 37 S.W.3d at 894.  One year after the dissolution had been entered, the husband elected to waive a portion of his military retirement pay for disability benefits.  
Johnson
, 37 S.W.3d at 894.   The wife filed a petition to enforce the judgment for dissolution, which the trial court denied.  
Johnson
, 37 S.W.3d at 894.  On appeal, the reviewing court reversed, reasoning that when a judgment for dissolution divides military retirement benefits, a nonmilitary spouse has a vested interest in his or her portion of those benefits as of the date of the court's decree.  
Johnson
, 37 S.W.3d at 897.  That vested interest cannot be unilaterally diminished by an act of the military spouse.  
Johnson
, 37 S.W.3d at 897. 

Krempin
, like 
Johnson
, involved a situation where, pursuant to a judgment for dissolution, the wife had been receiving monthly payments reflecting a certain percentage of the husband's military pension.  
Krempin
, 70 Cal. App. 4th
 
 
at 1011, 83 Cal. Rptr. 2d at 136.  More than two years after the wife's payments had commenced, the husband's disability rating was increased to 100% from 40%.  
Krempin
, 70 Cal. App. 4th
 
 
at 1011, 83 Cal. Rptr. 2d at 137.  The husband therefore ceased receiving a monthly pension and, accordingly, the wife ceased receiving monthly payments.  
Krempin
, 70 Cal. App. 4th
 
 
at 1011, 83 Cal. Rptr. 2d at 137.  The wife unsuccessfully petitioned the trial court for relief.  
Krempin
, 70  Cal. App. 4th
 
 
at 1011, 83 Cal. Rptr. 2d at 137.  On appeal, the  reviewing court reversed and remanded for a determination as to whether the parties intended that the wife receive a share of the husband's total retirement pay or just the disposable retired or retainer pay.  
Krempin
, 70 Cal. App. 4th
 
 
at 1020-21, 83 Cal. Rptr. 2d at 142-43.  The reviewing court concluded that if the parties' intent was that the wife receive a share of the husband's total retirement pay, enforcing the divorce decree as it had been intended would not offend 
Mansell
 so long as the husband would be able to satisfy his obligation with assets other than his disability benefits.  
Krempin
, 70 Cal. App. 4th
 
 
at 1021, 83 Cal. Rptr. 2d at 143.

Based on the foregoing persuasive authority, we believe that a party's vested interest in a military pension cannot be unilaterally diminished by an act of a military spouse, and we apply this principle to the present case.  Here, the parties agreed that Susan would receive "25% of the gross retired or retainer pay due Mark."  It is clear that the parties intended that Susan would receive a percentage of Mark's total retirement pay and not just his disposable retired or retainer pay.  The parties' intent was incorporated into the judgment for dissolution.  Mark retired and the judgment for dissolution was implemented.  However, Mark thereafter decided to accept an increased amount of disability benefits.  This resulted in a reduction of Mark's disposable retired or retainer pay.  This accordingly reduced Susan's entitlement.  Mark certainly had a legal right to receive disability benefits, but his doing so caused a diminution in the amount of his retirement pay that Susan had been receiving for over three years.  Mark's decision frustrated the parties' intent and the trial court's judgment for dissolution.  Indeed, to allow Mark to unilaterally diminish Susan's interest in his military pension would constitute an impermissible modification of a division of marital property.  As such, we affirm the trial court's order of November 3, 2000, in which it ruled that Susan was entitled to an amount equal to 25% of Mark's military pension as it existed on the date he retired.   Because the trial court's November 3, 2000, order does not directly assign Mark's military disability pay, it does not offend the United States Supreme Court's ruling in 
Mansell
.

However, we believe that the trial court's order of April 30, 2002, is in direct contravention of 
Mansell
.  The trial court's April 30, 2002, order specifically orders Mark to withhold and pay over to Susan 22.5% of his monthly disability benefits.  This was improper.  Pursuant to 
Mansell
, courts may not treat as divisible military disability pensions.  
Mansell
, 490 U.S. at 594-95, 104 L. Ed. 2d at 689, 109 S. Ct. at 2032.  Mark must be able to satisfy his obligation with a source of funds other than his disability benefits.  Accordingly, we reverse the trial court's order of April 30, 2002, and remand the cause for further proceedings.  On remand, the trial court must determine if Mark is free to satisfy his obligation with assets other than his disability benefits, and draft a new order accordingly.  This will ensure conformity with 
Mansell
.  Parenthetically, we note that the USFSPA allows a nonmilitary spouse to receive up to 50% of a military spouse's disposable retired or retainer pay.  10 U.S.C. §1408(e)(1) (2000).       

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded for additional proceedings. 

Affirmed in part and reversed in part; cause remanded.

GROMETER 
and BYRNE, JJ., concur.

FOOTNOTES
1:  Monthly disability benefits are beneficial to the military retiree as they are nontaxable and entitle a disabled veteran to be treated at VA hospitals for his or her disability.  See 38 U.S.C. §3102, 5301(a) (2000).  They also entitle a disabled veteran to educational assistance.  See 38 U.S.C. §3500 (2000).  However, since a duplication of military benefits is statutorily prohibited, in order to receive disability benefits, a veteran must waive any portion of his military pension that would be duplicative of the disability benefits.  38 U.S.C. §3105 (2000).