**Maria Isabel MOON,**
**Petitioner/Appellant/Cross–Respondent,**

**v.**

**Timothy Dean MOON, Respondent/**
**Respondent/Cross–Appellant.**

**No. 56931, 56977.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 17, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 1990.

Application to Transfer Denied
Oct. 16, 1990.

Kenneth S. Lay, Clayton, for petition-er/appellant/cross-respondent.

Jeffrey S. Paull, Clayton, for respon-dent/respondent/cross-appellant.

REINHARD, Judge.

Wife appeals from the trial court's order granting husband's motion to modify a dissolution decree and denying her request for attorney's fees. Husband appeals from the trial court's amended judgment awarding wife $670.12 per month representing 41.7% of husband's military retirement pay. We affirm in part and reverse in part.

The parties' marriage was dissolved on April 18, 1986. Wife was awarded custody of the parties' three children: Timothy, born July 15, 1968; Michael, born September 21, 1970; and Joseph, born January 28, 1976. Husband was given visitation rights. The decree provided that the residence of the children "shall not be changed from the state of Missouri nor shall said children be removed from the state of Missouri for more than 90 days without prior specific authorization of the Court or written consent of the noncustodial parent." Husband was ordered to pay child support in the amount of $225 per child per month. Pursuant to the parties' separation agreement, husband agreed to pay wife non-modifiable, contractual maintenance in the amount of $200 per month. The maintenance obligation was limited in duration for a period of 48 months commencing with wife's enrollment as a full time graduate student or in any event no later than June, 1991.

At the time of the decree husband was receiving $1465 per month in retirement pay from the U.S. Army. As part of their *property division* the parties agreed that wife would receive one-half of the retire-

ment pay: "Husband hereby assigns to wife as alternate payee the right to receive 41.7% [one-half of the 83.4% marital portion] of his retired pay entitlement at the present rate and at any rate it may be increased to in the future." The agreement was incorporated into the decree as a Qualified Domestic Relations Order. The trial court retained jurisdiction to supervise the payment of retirement benefits.

The record reveals that after the dissolution wife attended Washington University as a graduate student in Spanish literature. She received a scholarship which paid her tuition. She subsequently enrolled in the University of Guadalajara (Mexico) because she understood that the cost of living would be less than that in St. Louis.

On August 6, 1987 wife filed a motion to change the residence of the parties' two youngest children to Guadalajara, Mexico. Husband's attorney entered a special appearance wherein he suggested to the court that husband was out of the country and could not be served with wife's motion and that, based on a prior conversation between himself and husband, he believed that husband would be opposed to the change requested by wife. Wife filed a motion admitting that the service was insufficient and removing the motion from the docket.

On August 31, 1987 wife, without husband's consent, moved with the two younger children to Guadalajara, Mexico. The oldest son was then employed and living in St. Louis. Husband had moved in July of 1986 to Connecticut to accept new employment. He moved back to St. Louis in September of 1988 to commence employment with the Federal Aviation Administration and began living with his fiancee.

Husband eventually received notice of wife's motion. On December 2, 1987 he filed a motion to change the custody of the children and a motion to declare the oldest child emancipated. Two days later the trial court, on its own motion, granted wife temporary permission to remove the minor children to Guadalajara and consolidated all motions then before it for a single hearing. On December 8, 1987 husband filed a motion to reduce child support. Mother on November 20, 1987 filed a motion to modify wherein she alleged that she was not receiving her full portion of the military retirement pay due to income tax withholding and the fact that husband's re-employment with the federal government resulted in a lower monthly payment.

The court heard evidence on February 27, 1989. It granted husband's motion to modify, awarding him custody of the two minor children (then aged 18 and 13) and ordering wife to pay child support in the amount of $50 per month per child. Wife was granted visitation rights. The court found that the oldest child is emancipated. As to the military retirement pay, the court found that the amount paid to wife did not violate the earlier order. Finally, the court found that the respective financial circumstances of the parties was such that they should be required to pay their own attorney's fees.

Wife filed a "motion to amend judgment or for new trial" wherein she alleged, inter alia, that the trial court erred in failing to award her additional military retirement pay. The record reveals that at the time of the parties' dissolution, husband was receiving $1465 per month in retirement pay. Pursuant to the separation agreement, husband paid wife $611 per month (41.7% of $1465) in each of the first three months after the divorce. Thereafter wife received her payments directly from the U.S. Army Finance and Accounting Center (Center). Those payments amounted to $515.70 per month. The payments were less because the Center withheld income taxes from the gross amount of husband's retirement pay and computed wife's 41.7% portion based on the after-tax amount. By the time of the hearing, husband's retirement benefit had been adjusted for cost-of-living increases, resulting in a monthly gross payment of $1607. However, under the Army's "dual compensation rule" an additional $482 was deducted from the gross amount because husband again was employed by the federal government. Thus wife's monthly payment was $404.25. Wife argued in her motion to modify and motion to amend that

the parties' intention, as manifested in their separation agreement, was that wife should receive 41.7% of the gross amount of husband's monthly military retirement benefit. The trial court agreed and entered an amended judgment for wife in the amount of $670.12 (41.7% of $1607) per month with a credit for husband equal to the amount paid monthly to wife by the Center.

Our review is under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the trial court's judgment unless it is unsupported by substantial evidence, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.*

■ Wife's principal point on appeal is that the trial court erred in transferring custody of the minor children to husband. At the hearing, husband testified that he never consented to wife's move with the children to Mexico. Wife testified that she sent husband a written consent form but that it was not returned. Husband testified that his main objection to wife's move was that it resulted in his inability to exercise his right of visitation. Section 452.377, RSMo 1986 provides:

A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. Where the noncustodial person has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. Violation of a court order under this section may be deemed a change of circumstances under section 452.410, allowing the court to modify the prior custody decree.

Under this section, because wife removed the minor children from the state of Missouri for a period of 90 days without husband's consent or a court order, the trial court was authorized to change the childrens' custody. *See Hall v. Hall*, 694 S.W.2d 284, 286 (Mo.App.1985). After reviewing the record and under our standard of review, we conclude that the trial court did not err in determining that the childrens' best interests are served by the change in custody to father. Point denied.

■ In her other point, wife contends the trial court erred in denying her request for attorney's fees. We agree. The record reveals a wide disparity in the parties' relative financial circumstances.[1] Also, our resolution of husband's cross-appeal will increase the disparity. We therefore reverse that portion of the trial court's order denying wife's request for attorney's fees and, pursuant to Rule 84.14, order husband to pay $3500.00 toward wife's fees. Husband shall be responsible for all court costs.

Husband's point in his cross-appeal is an attack on the trial court's amended judgment. He argues that the judgment is an unauthorized division of marital property. We are constrained to agree.

Prior to the enactment by Congress of the Uniformed Services Former Spouses' Protection Act (the "Act"), 10 U.S.C. § 1408 (1988), state courts were precluded from dividing military retirement pay upon dissolution of a marriage. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). The Supreme Court, in a case similar to the one at bar, has recently held that the Act is only a partial rejection of the *McCarty* rule. *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

Section 1408 (c)(1) of the Act provides:

Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for

---

1. At the time of the hearing, wife had approximately $5000 in savings. This amount is the remainder of the approximately $20,000 which wife realized through the sale of the marital home. Wife testified that the fund had been depleted to pay for living expenses.

Wife's income comes from a part-time job, her share of the military retirement pay and the contractual maintenance. Her expenses far exceed her income.

pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

The term "disposable retired or retainer pay" is defined in § 1408(a)(4):

"Disposable retired or retainer pay" means the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member for disability under chapter 61 of this title) less amounts which—

. . . .

(B) are required by law to be and are deducted from the retired or retainer pay of such member, including fines and forfeitures ordered by courts-martial, Federal employment taxes, and amounts waived in order to receive compensation under title 5 or title 38;

(C) are properly withheld for Federal, State or local income tax purposes. . . .

In *Mansell* the husband's disposable retired pay was reduced by an amount waived by him, under title 38, in order to receive disability compensation. Because the amount so waived is explicitly excluded by § 1408(a)(4)(B) from the definition of disposable retired pay, the Court held that state courts are powerless to divide such amounts: "[S]tate courts have been granted the authority [by the Act] to treat disposable retired pay as [marital] property; they have not been granted the authority to treat total retired pay as [marital] property." *Mansell*, 109 S.Ct. at 2028.

■ Here, the two pertinent amounts which are deducted from husband's gross retirement pay before computing the 41.7% payable to wife are income taxes and a deduction pursuant to 5 U.S.C. § 5532 (1988), the "dual compensation rule." Both of these amounts are excluded by

§ 1408(a)(4) from the definition of disposable retired or retainer pay. Thus under *Mansell*, the trial court erred in treating these amounts as properly divisible marital property.[2]

Judgment affirmed in part and reversed in part.

GARY M. GAERTNER, P.J., and CRIST, J., concur.

**2.** It is apparent that this result allows former military personnel unilaterally to alter the terms of a final judgment dividing marital property. The Supreme Court recognized the harshness of this result when it observed:

We realize that reading the statute literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result

when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.

*Mansell*, 109 S.Ct. at 2031. *See also Id.* at 2032–37 (O'Connor, J. dissenting).