IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 1999 Session

## BERTHA LOU SMITH v. HARLEY WILSON SMITH

**Appeal from the Chancery Court for Montgomery County**
**No. 58-614     Carol Catalano, Chancellor**

---

**No. M1998-00937-COA-R3-CV - Filed March 13, 2001**

---

The issues in this post-divorce case arise because the former husband's waiver of military retirement pay in order to receive disability benefits affected the former wife's receipt of her portion of the retirement pay which had been awarded to her in the distribution of marital property. The former husband reduced his payments to the former wife, who filed a contempt petition, seeking to reinstate the previously ordered amounts. The trial court considered the intent embodied in the divorce decree, and determined that the former wife should continue to receive the amount she received at the time of the divorce, despite the fact that the former husband no longer received "retirement pay." In light of our Supreme Court's holding in *Johnson v. Johnson*, No. W1999-01232-SC-R11-CV, 2001 WL 173502 (Tenn. Feb. 23, 2001), we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Thomas R. Meeks, Gregory D. Smith, Clarksville, Tennessee, for the appellant, Harley Wilson Smith.

Roland Robert Lenard, Clarksville, Tennessee, for the appellee, Bertha Lou Smith.

**OPINION**

This appeal involves issues relating to military retirement pay. Federal law authorizes state courts to treat the "disposable retired pay [of a service member] . . . either as property solely of the

member or as property of the member and his spouse," 10 U.S.C. § 1408(c)(1),[1] thus allowing division of such retirement benefits as marital property upon the dissolution of a marriage. However, "disposable retired pay" does not include amounts deducted from that pay as a result of a waiver of retired pay . . . in order to receive compensation under . . . title 38 [disability pay]." 10 U.S.C. § 1408(a)(4)(B). In order to receive disability pay, a former service member must waive a corresponding portion of his or her retirement pay. 38 U.S.C. § 5305. Disability pay is exempt from federal, state and local taxation, and this exemption provides an incentive for a former service member to make the waiver which otherwise would have no economic impact. *Mansell v. Mansell*, 490 U.S. 591, 583-84, 109 S. Ct. 2023, 2026 (1989).

At the time the case before us was argued, the law was settled that state courts cannot treat disability pay as marital property subject to division upon divorce. *Mansell*, 490 U.S. at 594-95, 109 S. Ct. at 2032 (state court could not treat that portion of husband's total retirement pay which was disability pay as marital property in its division of property at the time of divorce).[2] However, it remained unsettled whether a post-divorce waiver of retirement pay in exchange for a corresponding amount of disability pay could reduce a former spouse's previous award, as marital property, of a portion of the military retirement pay. That is the issue presented by the facts of this appeal.

Bertha Lou Smith ("Wife") and Harley Wilson Smith ("Husband") were divorced in 1990 following a nineteen year marriage. At the time of the divorce, Husband was retired and was receiving military retirement pay. The court, noting that the parties had "agreed due to the length and time of their marriage and his length of service," that Wife's portion of the retirement pay should be 27%, ordered Husband to pay Wife that percentage of his "present military retirement" and ordered that her share "shall increase if his retirement increases." The trial court calculated Wife's portion of Husband's "present military retirement" at the time of the divorce to be $282.15 per month.[3]

---

[1] In 1982, Congress adopted the Uniformed Services Former Spouses' Protection Act, codified at 10 U.S.C. § 1408, in response to *McCarty v. McCarty,* 453 U.S. 210, 101 S. Ct. 2728 (1981), which held that Federal law pre-empted the application of state community property law to military retirement pay.

[2] Ironically, after prevailing before the U.S. Supreme Court, Mr. Mansell got no relief from his divorce decree. On remand, the California Court of Appeals held that Mr. Mansell had, by signing the property settlement agreement, waived his right to assert that the court has exceeded its jurisdiction by awarding that portion of his disability benefits to Ms. Mansell. *In re Marriage of Mansell*, 265 Cal. Rptr. 227, 234 (Ct. App. 1989).

[3] Also prior to the divorce, Husband had been classified as 10% disabled. Presumably then, his income based on his military service was 10% from disability benefits and 90% from retirement pay. The record is unclear as to whether the $282.15 monthly payments to Wife, as ordered by the court, was based upon the total income or on the 90% labeled "retirement." Language in the decree itself could be construed as indicating that the award might have been based on the total income, but a later "brief" of Husband's filed with the trial court in 1993 states, "His disability was not divided." Because the amount awarded to Wife, $282.15 per month, is not disputed or unclear, we shall proceed with the assumption that the trial court did not impermissibly award Wife a portion of Husband's disability benefits in its initial order distributing marital property.

In October 1991, Husband filed a "Motion to Modify Property Settlement," stating that he had suffered a heart attack in 1990 and had been unable to continue working. He stated that the Veterans Administration had "placed [him] on disability, leaving him with no retirement income." He asked the court to "modify the property settlement to provide that [Wife] is not entitled to any of [Husband's] disability benefits." Wife filed a petition for contempt in January 1992, based on other financial matters not relevant to this appeal. Later in January, both motions were heard before a different judge from the one who had awarded the divorce. As relevant to this appeal, the court found that Husband had waived his retirement in order to receive the disability payments; that the percentage of his retirement awarded to Wife was a division of property; and that Husband was liable "no matter his physical condition." The court ordered Husband to continue paying the previously ordered amount, and awarded Wife a judgment for arrearages.

Husband filed a "Motion to Reconsider," requesting that the court take additional proof "which will reflect that the Waiver entered into by Defendant with the Veterans Administration was non-voluntary." A "Veteran's Application for Compensation or Pension at Separation from Service" was attached to the motion. That application was signed in 1985, prior to the divorce, and advised that by signing, Husband waived retirement benefits "in the amount of any VA compensation." Husband argued to the trial court that, because he was already receiving disability benefits at the time of the divorce, and had already signed the waiver, the increase in disability benefits, and the resulting reduction of retirement benefits, was not the result of any affirmative act on his part. The trial court denied Husband's motion to reconsider.

In 1996, Wife filed another petition for contempt. In it she stated that "a hearing was held in the United States District Bankruptcy Court for the state of Georgia, in which the parties resolved all of the matters pending upon the date of the bankruptcy hearing."[4] She alleged that from that time forward, Husband had been sending her $182.12, when the divorce decree set her monthly distribution at $282.15. She also complained that his "retirement income" had increased, but that he had "refused to pay her the increase." She sought to have Husband held in contempt, to have her portion increased in proportion to Husband's increase in benefits, and to obtain a judgment on the arrearages.

A hearing was held before a third judge, the trial court herein, on May 12, 1998. A statement of the evidence appears in the record.[5] The statement contains the following:

> In April 1996, the United States Army determined that the Appellant's service connected disability had appreciated to 100%. Consequently, the Appellant became disqualified to receive military retirement. The Appellant had no control or influence in the decision process with the United States Army's decision to upgrade the

___

[4] The date of the bankruptcy hearing is unclear, however, Wife's petition sought arrearages only from November 1, 1995 forward.

[5] That statement was prepared by Husband's counsel and signed by the trial court prior to Wife's retention of appellate counsel, thus, Wife was unrepresented when the statement was entered.

Appellant's Military disability from 10% to 60% and finally 100%. The decision to upgrade the Appellant's medically connected disability predicated on the Appellant's deteriorative state of health and the United States government military doctors' medical opinions. The Appellant recognizing that 10 U.S.C. sec. 1408 and <u>Mansell v. Mansell</u>, 480 U.S. 581 (1989) holds that military disability is not a part of marital property, Appellant stopped paying military retirement proceeds to Appellee because Appellant stopped receiving any military retirement.

The trial court issued an order on June 29, 1998, which echoed the 1992 order, stating:

Concerning the retirement, the Court finds that the said Harley Wilson Smith does have the ability and can designate his pay either as disability or retirement; and the Court finds, however, that in this case, he has signed a waiver and agreed to accept disability in lieu of retirement. The Court further finds that the previous Order entered awarding the percentage of his retirement is in fact a division of property and that the Defendant is not relieved of his obligation to pay that. Defendant is liable for the division [of] property earlier granted no matter his physical condition and his liability continues.

The court awarded Wife a judgment for $10,851.39, representing arrearages accumulated since Husband stopped making payments to Wife, but did not rule on Wife's motion for an increase which corresponded to Husband's increases. Husband appeals.

I.

At oral argument of this case, this court was informed that several other cases involving the issue were in various stages of litigation or appeal.[6] A few months later, the Western Section of this court released its opinion in *Johnson v. Johnson*, No. 02A01-9901-CV-00015, 1999 WL 713574 (Tenn. Ct. App. Sept. 14, 1999), and held that relief was not available under Tenn. R. Civ. P. 60.02 to a former wife whose monthly share of the former husband's military retirement benefits was reduced by $181.00 per month by his waiver of a portion of his retirement pay for disability benefits. The Supreme Court of Tennessee then granted permission to appeal in *Johnson*, and has now issued its opinion which guides our decision in the case before us. *Johnson v. Johnson*, No. W1999-01232-SC-R11-CV, 2001 WL 173502 (Tenn. Feb. 23, 2001).

II.

In *Johnson*, the parties entered into a written marital dissolution agreement (MDA) which awarded the wife "$1,845.00 per month as support" until the husband retired, at which time she would "receive one-half of all military retirement benefits due" the husband. *Johnson*, 2001 WL 173502 at *1. After the husband's retirement, the wife received $1,446, half of the husband's

---

[6]*See, e.g., Hillyer v. Hillyer*, No. M1998-00942-COA-R3-CV, 2001 WL _____ (Tenn. Ct. App. Mar. __, 2001).

retirement pay for about a year. The husband "later elected, pursuant to federal law, to receive a portion of his retirement pay in the form of tax-free disability benefits. His retirement pay was reduced by the amount of those disability benefits to avoid double payment. . ." *Id.* As a result, the wife's share of the retirement pay was also reduced. The wife petitioned the court to modify the final decree, asking that the husband be ordered to pay alimony in the same amount her payments had been reduced, or in the alternative, to modify the judgment pursuant to Tenn. R. Civ. P. 60.02(5) (a party may be relieved from judgment for "any other reason justifying relief"). *Id.* The trial court and this court denied relief to the wife, holding that *Gilliland v. Stanley*, which denied relief to the former spouse under very similar circumstances, controlled. The Supreme Court granted Ms. Johnson's application to appeal, and reversed.

The Supreme Court noted, that while alimony awards may be modified under certain circumstances, "court orders distributing marital property are not subject to modification." *Id.* at *2. The Court then held that military retirement pay is marital property subject to distribution and that the payments to Ms. Johnson were periodic distributions of marital property rather than alimony. As such, the division of retirement pay was not subject to later modification. *Id.* Rather than deciding that this conclusion precluded relief to Ms. Johnson, the Court determined that it had the opposite effect.

> We are of the opinion, however, that Ms. Johnson's characterization of her petition as one seeking "modification" is incorrect. The whole of her argument and the remedy she seeks indicate that she desires no more than that which she originally received at the time of Mr. Johnson's retirement: one half of the military retired pay he was entitled to receive at the time of his retirement. . . . [Her argument] alleges that the parties agreed to a course of action, that the trial court ordered that action, and that Mr. Johnson has failed to perform as ordered.

*Id.*

The Court looked to the terms of the MDA, and determined that "all military retirement benefits" was not defined in the document, but found the phrase to be unambiguous. *Id.* at *3. The Court found that "all military retirement benefits" has a usual, natural, and ordinary meaning, "all amounts to which the retiree would ordinarily be entitled as a result of retirement from the military." *Id.* Accordingly, the Court held that "Ms. Johnson's interest in those 'retirement benefits' vested as of the date of entry of the court's decree and could not be unilaterally altered." *Id.*

It further held:

That rule of law, however, is the very reason Ms. Johnson prevails in this case. Once Ms. Johnson obtained a vested interest in Mr. Johnson's "retirement benefits," Mr. Johnson was prohibited from taking any action to frustrate Ms. Johnson's receipt of her vested interest. "Nothing in the [USFSPA] suggests that a court's final award of a community property interest must [or may] be altered when the military retiree

obtains [disability benefits]." *Gaddis,* 957 P.2d at 1013.[7] Mr. Johnson's failure to compensate Ms. Johnson to the extent of her vested interest in his retirement benefits constituted a unilateral modification of the MDA and the divorce decree in violation of *Towner.*[8]

We hold that when an MDA divides military retirement benefits, the non-military spouse has a vested interest in his or her portion of those benefits as of the date of the court's decree. That vested interest cannot thereafter be unilaterally diminished by an act of the military spouse. Such an act constitutes an impermissible modification of a division of marital property and a violation of the court decree incorporating the MDA.

In so holding, we are undeterred by the United States Supreme Court's ruling in *Mansell v. Mansell,* 490 U.S. 581 (1989). *Mansell* held that the USFSPA "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." The trial court's decree did not divide Mr. Johnson's disability benefits in violation of *Mansell.*

*Id.* at *4-5 (citations omitted).

The Court remanded the case to the trial court with instructions that the trial court "enforce its decree to provide Ms. Johnson with the agreed upon monthly payment . . . without dividing Mr. Johnson's disability pay," having already determined that Ms. Johnson's vested interest in half of Mr. Johnson's retirement pay entitled her to $1,446.00 per month. *Id.* at *5.

### III.

The case before us differs from *Johnson* in one respect: the Smiths did not have an MDA.[9] Ms. Smith's right to a share of Mr. Smith's retirement pay arises from the order of the court entered as part of their divorce proceedings in 1986. The fact that the Smiths did not have an MDA does not affect the application of *Johnson* to this case.[10] The conclusion reached by the Supreme Court in *Johnson* is based to a large extent on the principle that a distribution of marital property cannot be

---

[7]*In re Marriage of Gaddis*, 957 P.2d 1010 (Ariz. Ct. App. 1997).

[8]*Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993).

[9]Even though no formal MDA was entered, it appears from the trial court's initial order and from language in filings by Husband, that the parties agreed to 27% of Husband's retirement pay as Wife's share of the future distribution of this marital asset.

[10]We note that the case relied upon by the Supreme Court, *In re Marriage of Gaddis*, involved a court ordered property division rather than an agreement by the parties. *Gaddis*, 957 P.2d at 1010.

later modified by one of the parties.[11]  This principle applies because the property division became a judgment of the court. *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993). Thus, it is the incorporation of the MDA into the court order which made it nonmodifiable. *Id.*, *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). The Supreme Court's language in *Johnson* affirms this reasoning, "the divorce decree's apportionment of that marital property is not subject to modification." *Johnson*, 2001 WL 173502 at *2. Similarly, the court's primary holding in *Johnson* makes the absence of an MDA irrelevant: "We further hold that Ms. Johnson's interest in those "retirement benefits" vested as of the date of the court's decree and could not be unilaterally altered." *Id.* at *3. The Court further held that an act of a military former spouse which reduces or eliminates a vested interest of the non-military former spouse in retirement pay "constitutes an impermissible modification of a division of marital property and a violation of the court decree incorporating the MDA." *Id.* at *4. It is just as much an impermissible modification and violation of the court decree where the division of property was ordered by the court without an MDA.[12]

## IV.

Like Ms. Johnson, Ms. Smith brought this action "in order to recoup the loss . . . of support," in the form of deferred distribution of marital property, that resulted from her former spouse's election to receive disability benefits and his failure to directly make up that loss. We hold that at the entry of the divorce decree Ms. Smith obtained a vested right to twenty-seven per cent (27%) of Mr. Smith's "present military retirement," as of the date of the decree, "which shall increase if his retirement increases." Ms. Smith is entitled to enforce that decree.

Accordingly, we affirm the trial court's award of relief to Ms. Smith and remand this case to the trial court for proceedings necessary and appropriate, consistent with this opinion, to enforce its 1990 decree distributing marital property. Such proceedings should include determination of the amounts due Ms. Smith, including calculation of any "increases" and arrearages. Mr. Smith shall

---

[11]Judicial modification may be available under Tenn. R. Civ. P. 60.02 in limited circumstances, but "the bar for attaining relief is set very high." *Johnson*, 2001 WL 173502 at *2 n.2.

[12]Husband's arguments to this court, made before the *Johnson* decision was released, were not focused on the method by which Husband obtained his increased disability rating. We note, however, from his statement of the evidence that he takes the position that he had "no control" over the disability rating nor the resulting benefit he received. We cannot accept such a conclusory statement as a "fact," and are unpersuaded by Mr. Smith's attempts to characterize the waiver of his retirement pay in exchange for disability benefits as something other than his unilateral act. Having failed to retract the waiver or to otherwise disavow the benefits of the substitution of the disability pay, he cannot seek to be relieved of its consequences on the basis he did not "act." We note that, pursuant to 38 U.S.C. § 5305, Husband was only able to receive the disability benefits "upon the filing . . . of a waiver of so much of [his] retired or retirement pay as is equal in amount to such pension or compensation." Further, he has failed to pay his former spouse the money she was previously awarded, certainly a voluntary and unilateral act on his part. In *Johnson*, the Supreme Court distinguished other effects on the amounts received, noting, "of course, normal fluctuations in the value of military retirement benefits not occasioned by the acts of the parties cannot constitute a unilateral deprivation of a vested interest. *See Gaddis*, 957 P.2d at 1011 (describing fluctuation in military spouse's gross retirement pay). *But cf. Pierce*, 982 P.2d at 999 (likening retirement benefits diminished by the unilateral act of military spouse to a marital asset that has simply "declined in value")." *Johnson*, 2001 WL 173502 at *4 n.4.

be credited for amounts already paid since the bankruptcy. As the Supreme Court directed in *Johnson*, such enforcement shall be accomplished without dividing Mr. Smith's disability pay. We interpret that instruction as only limiting the trial court's ability to order direct payments to Ms. Smith from the payor of Mr. Smith's benefits, which we understand to be the Veterans Administration. Costs are taxed to the appellant, Harley Wilson Smith, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE