COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bumgardner and Agee
Argued at Alexandria, Virginia


KENNETH WAYNE HUBBLE

MEMORANDUM OPINION[*] BY
v.    Record No. 2015-01-4        JUDGE G. STEVEN AGEE
                                      AUGUST 6, 2002
TERRIE LEA SMITH HUBBLE


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
James W. Haley, Jr., Judge

Timothy T. Szabo (Szabo, Zelnick & Erickson,
P.C., on brief), for appellant.

Philip S. Marstiller, Jr. (Gary M. Nuckols;
Chandra D. Lantz; Hirschler Fleischer, P.C.,
on brief), for appellee.


Kenneth Wayne Hubble (husband) appeals the decision of the

Stafford County Circuit Court to modify its final divorce decree

ordering him to pay Terrie Lea Smith Hubble (wife) a monthly sum

in addition to the payments she receives through direct

allotment from his military retirement plan.  For the following

reasons, we affirm the decision of the circuit court.

I.  BACKGROUND

As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

value, only those facts necessary to a disposition of this appeal are recited.

The parties entered into a property settlement agreement (the PSA), dated December 31, 1996, which provided for the division of marital property.  Provision 6 of the PSA provides, in pertinent part:

> Upon the sale and closing of the marital residence . . . each and every month for as long as husband shall receive military retention/retirement pay, husband shall pay to wife through direct allotment, one-half of all monthly payments.

As consideration for this negotiated monthly payment, wife waived all claims to spousal support, compensation under equitable distribution and all claims to any pension, deferred compensation and state retirement plans.

The final divorce decree of July 7, 1997, provides it is "decreed that said Property Settlement Agreement be and is hereby affirmed, ratified and . . . incorporated into this decree, and that the parties fully comply with the terms of said Property Settlement Agreement."  Neither the PSA nor the decree defines "monthly payments" or differentiates between retirement and disability payments.

Husband was receiving military retirement benefits, but not military disability benefits, at the time the PSA was executed and the final decree was entered.  Subsequent to the decree, husband applied to the Department of Veterans' Affairs for a

-

disability rating sufficient to qualify for disability benefits. Husband's request was granted, and he elected to receive a portion of his military retirement pay in the form of tax-free disability benefits. Husband's receipt of disability benefits required him to waive an equal amount of military retirement pay, which resulted in a diminished monthly sum paid directly to wife by direct allotment.

Wife then filed a "Petition to Show Cause for Contempt, a Motion to Enforce Final Decree of Divorce, Motion to Modify Final Decree, Motion for Judgment on Arrears, and Motion for Award of Attorney's Fees." Wife alleged she had been receiving $883.28 per month as her one-half share of husband's retirement pay before the disability payment change, which reduced her monthly payment to $632.72. Husband denied liability for reduction in the direct allotment paid to wife, but did not deny the allegations as to the $883.28 per month pre-disability election payment and the $632.72 post-disability payment.

At the hearing on these motions, husband contended that the final decree was clear and unambiguous and wife was only entitled to 50% of the retirement benefits actually received. Therefore, he was not required to cover any shortfall in the monthly payments paid to wife by direct allotment due to his post-decree election to receive tax-free disability benefits in lieu of military retirement benefits.

-

The circuit court denied all of wife's motions except the "Motion to Modify Final Decree of Divorce."  As to that motion, the trial court ruled from the bench as follows:

> The agreement was that the lady was to collect one half of all monthly payments.  I don't care what the source is.  He can take it not out of his disability; take it out of some other source.

Citing Code § 20-107.3(K)(4), the circuit court entered an order to modify the 1997 final divorce decree:

> [Husband] shall . . . make direct payments to [wife], from month to month, so that the total payment received from [husband] each month would equal $883.28, less the total received by [wife] each month from her ex-husband's military retention/retirement pay as paid to her through direct allotment.

## II.  ANALYSIS

On appeal, husband contends the circuit court was without authority to modify its final divorce decree.  He also contends that there was insufficient evidence to support the fixed amount set by the circuit court's modification.  For the following reasons we disagree and affirm the trial court's decision.

### A.  MODIFICATION UNDER CODE § 20-107.3(K)(4)

In Owen v. Owen, 14 Va. App. 623, 419 S.E.2d 267 (1992), we held federal law does not prevent a husband and wife from entering into an agreement in which they agree to a "set level of payments, the amount of which is determined by considering disability benefits as well as retirement benefits."  Id. at 628, 419 S.E.2d at 270.  "Such an arrangement does not offend

-

the federal prohibition against a direct assignment of military disability pay by property settlement agreement."  Id. at 626, 419 S.E.2 at 269.  When Mrs. Owen's monthly payment was decreased due to the husband's election to receive disability benefits, we held "the [circuit] court may consider this reduction in determining its award and may provide for alternative payment as compensation for the wife's loss."  Id. at 627, 419 S.E.2d at 270.

In the case at bar, wife's right to a sum equal to 50% of the monthly payments received by husband arises from the PSA that was approved and confirmed by the circuit court in its final divorce decree.[1]  Such an arrangement is clearly permissible under Owen.  See id.  Wife thereby acquired a vested property right, through the final divorce decree, to one-half of husband's monthly payments as of the entry of the decree.  See generally Shoosmith v. Scott, 217 Va. 290, 292, 227 S.E.2d 729, 731 (1976); Higgins v. McFarland, 196 Va. 889, 894-95, 86 S.E.2d

---

[1] The failure of the PSA to define the term "military retention/retirement pay" does not render the PSA term "one half of all monthly payments" undefined.  In the context of the PSA, the reference to "military retention/retirement pay" is to establish the period of time for which wife is to receive monthly payments, to wit:  "for as long as husband shall receive military retention/retirement pay."  Husband has never argued that he failed to receive military retention/retirement pay so as to terminate wife's entitlement to monthly payments.

We, therefore, disagree with the view expressed in the dissent that "all monthly payments" is limited to military retirement payments, as the plain language of the PSA does not so provide.

-

168, 172 (1955). There is no provision in the PSA or the final decree that limits the wife's otherwise vested rights.

A party's vested right under a court's decree may not be unilaterally altered by another party. See id. Yet, that is what occurred in this case. Husband's post-decree decision to apply for and accept disability benefits in lieu of military retirement benefits resulted in a reduction of the monthly payments he would have received as retirement pay and to which wife had a vested right and was receiving by direct allotment. While husband had the legal right to elect to receive the disability benefits, his doing so caused a unilateral modification of the final divorce decree and divested wife of her then vested property entitlement. In effect, husband altered the terms of the PSA without court approval.

In such a situation, Code § 20-107.3(K)(4) empowers the circuit court to modify a final divorce decree so as to effectuate the expressed intent of the agreement. See Code § 20-107.3[2]; see also Williams v. Williams, 32 Va. App. 72, 526 S.E.2d 301 (2000). The decree may be modified so long as the modifications are "consistent with the substantive provisions of

---

[2] Under Rule 1:1, courts ordinarily lose jurisdiction twenty-one days after entry of a decree, but when qualifying or maintaining a qualified domestic relations order, courts may "[m]odify any order . . . intended to . . . divide . . . retirement benefits . . . to revise or conform its terms so as to effectuate the expressed intent of the order." Code § 20-107.3(K)(4).

-

the original decree" and not made "simply to adjust . . . [the decree's] terms in light of the parties' changed circumstances." Caudle v. Caudle, 18 Va. App. 795, 798, 447 S.E.2d 247, 249 (1994).

The circuit court's modifying order now on appeal simply revised the final divorce decree to conform to the substantive decision expressed in that decree: Wife is to receive half of husband's monthly payments. The circuit court effectuated the original decree's expressed intent by ordering husband to pay wife a sum equal to the sum she had been receiving before husband's unilateral and unauthorized modification less the sum now received through direct allotment. This modification was not a substantive modification; it did not modify the percentage or amount due wife as contemplated under the PSA. The modification accomplished what the final order directed and caused the expressed intent of the original order to be implemented. Before husband elected the disability waiver, wife received one-half of his monthly benefits. After the election, wife did not. However, once the modification decree was entered, wife was restored to the same position as before husband's election: She received one-half of husband's monthly payments, which is what the final decree provided. While part of such monthly payments are not now made by direct allotment, that circumstance is solely caused by husband's unilateral act which reduced wife's payments.

-

The circuit court is permitted to make such a procedural modification under Code § 20-107.3(K)(4). See Williams, 32 Va. App. 72, 526 S.E.2d 301. In Williams, we held the husband (the retirement plan participant) was required to make payments directly to his ex-wife when the QDRO entered originally did not cause the payment to the ex-wife of benefits from the plan as the final decree had provided. As in the case at bar, we found the authority in Code § 20-107.3(K)(4) "to effectuate the expressed intent of the order" to authorize modification of a prior decree where the modification was directed to the plan participant individually and not to the retirement plan itself. Id. at 76, 526 S.E.2d at 303. The action taken by the circuit court, therefore, was proper pursuant to Code § 20-107.3(K)(4).[3]

Our decision is consistent with our previous holdings and with holdings in other jurisdictions. In Johnson v. Johnson, 27 S.W.3d 892 (Tenn. 2001), the Supreme Court of Tennessee considered a similar case to that at bar. The Johnsons entered a written marital dissolution agreement (MDA), in which the parties agreed Ms. Johnson would "receive one-half of all military retirement benefits due the Husband" upon his

---

[3] The circuit court could not order that wife receive, by direct allotment, any portion of the sum received by husband as disability benefits. See 10 U.S.C. § 1408, et seq.; Mansell v. Mansell, 490 U.S. 581 (1989). Husband has not been ordered to pay wife his disability benefits. Instead, husband is free to satisfy his obligation to wife by using other available assets.

-

retirement.  After he retired, post-divorce and after Ms. Johnson had begun receiving her allotted share of benefits, Mr. Johnson elected to waive a potion of his military retired pay to receive the same amount in non-taxable disability benefits.  The payment of Ms. Johnson's share of the military retired pay was reduced accordingly.  She subsequently requested a modification, or enforcement, of the MDA in an amount equal to the reduction.

The Tennessee court found in favor of Ms. Johnson and held that by entering the MDA the parties agreed to a course of action, which the trial court ordered, and that Mr. Johnson failed to perform as ordered.  It reasoned that when an MDA divides military retirement benefits, the non-military spouse obtains a vested interest in his or her portion of those benefits as of the date of the final decree and any act of the military spouse that unilaterally decreases the non-military spouse's vested interest is an impermissible modification of a division of marital property and a violation of the final decree of divorce incorporating the MDA.  Id. at 897-98.

In In re Marriage of Gaddis, 957 P.2d 1010 (Ariz. Ct. App. 1997), the Arizona Court of Appeals was also faced with facts similar to the case at bar.  In Gaddis, the court's decree awarded Ms. Gaddis "one-half of [her husband's] military retirement benefits as of February 1994."  957 P.2d at 1010. Following entry of the divorce decree, Ms. Gaddis received payments of one-half of Mr. Gaddis' retirement income for nearly

-

a full year.  Mr. Gaddis subsequently obtained civil service employment with the federal government.  Pursuant to federal law, his monthly military retirement pay was reduced, which correspondingly reduced Ms. Gaddis' monthly payment of retirement benefits.  Id. at 1011.  Ms. Gaddis then petitioned the court to enforce the terms of the original divorce decree.

The Arizona Court of Appeals held that Mr. Gaddis' unilateral act constituted an impermissible modification of the divorce decree.  Id. at 1013.  The court held that "Husband deliberately frustrated the decree by voluntarily waiving retirement benefits which the court had vested in wife.  He could not reduce that vested interest by unilaterally obtaining civil service employment post-decree."  Id.

We find husband's actions here identical to those considered in Johnson and Gaddis, and hold, as in those cases, that such a unilateral modification is prohibited.[4]

### B.  THE MONTHLY SUM TO BE PAID TO WIFE

Husband also contends that the circuit court has acted erroneously in establishing the monthly sum to be paid to wife. It is his contention that the circuit court has acted to order him to pay wife a monthly sum higher than what she is entitled to under the parties' PSA.  Husband's argument arises from his contention that wife is only entitled to one-half of the actual

---

[4] See also Dexter v. Dexter, 661 A.2d 171 (Md. 1995).

-

retirement benefits he receives and nothing more.  As we previously held, wife is entitled to one-half of the monthly payments husband would ordinarily receive, regardless of his post-decree bifurcation of the payments into retirement and disability portions.  The circuit court's calculation of an amount to by paid by husband to wife is in accord with that entitlement.

The circuit court was presented with unrefutted allegations in wife's pleadings that she received $883.29/month prior to husband's election to receive disability benefits and then lesser amounts thereafter.  The $883.29 monthly payment is the amount to which wife had acquired a vested property right pursuant to the PSA and final divorce decree and represented "one-half of all monthly payments."  It was husband's unilateral act to modify the circuit court's final decree, and not any action by wife, which caused the court to specify one-half the payments as a particular dollar amount.  We, therefore, find no error in the circuit court's calculation and order finding that wife is entitled to receive the sum set in the modification decree through a combination of direct allotment and payment by husband of any monthly deficiency.[5]

---

[5] Husband's monthly benefits may fluctuate in the future due to cost of living adjustments and other factors.  Our decision only addresses the order before us, which does not consider the impact of future changes in the gross monthly benefit amount.

-

The decision of the circuit court is therefore affirmed.

Affirmed.

Benton, J., dissenting.

The final decree of divorce "affirmed, ratified and . . . incorporated" the parties' property settlement agreement. The portion of the agreement concerning the husband's military pension states as follows:

> [E]ach and every month for as long as husband shall receive military retention/retirement pay, husband shall pay to wife through direct allotment, one-half of all monthly payments. Until such time as the direct allotment begins, husband shall pay to wife, through certified funds, said one-half. Husband shall furnish to wife a copy of the IRS W-2 showing the annual amount of such payment . . . . [B]oth agree to take all necessary steps to have all tax obligations, both state and federal, arising from the receipt of such income appropriately allocated between them.

In response to the wife's motions, the trial judge entered an order that recites, in pertinent part, as follows:

> (1) The [wife's] Petition to Show Cause for Contempt is DENIED;
>
> (2) The Motion to Enforce Final Decree of Divorce is DENIED;
>
> (3) The Motion for Judgment on Arrears is DENIED;
>
> (4) [Both] Motion[s] for Award of Attorney's Fees are DENIED;
>
> (5) Motion to Modify Final Decree of Divorce is GRANTED to the [wife], in that the Final Decree of Divorce is modified in the following respect as it pertains to the [husband], pursuant to Code Section 20-107.3(K)(4) of the Code of Virginia, 1950, as amended. All other terms and conditions not in conflict with the same, as

-

> set forth in the Final Decree of Divorce
> remain in full force and effect:
>
> That [the husband] shall, effective May 1,
> 2001, make direct payments to [the wife],
> from month to month, so that the total
> payment received from [the husband] each
> month would equal $883.28, less the total
> received by [the wife] each month from her
> ex-husband's military retention/retirement
> pay as paid to her through direct allotment.

This order expressly denied the motion to enforce the final decree and granted the motion to modify the final decree. Code § 20-109(C) provides, however, that "if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed . . . no decree or order . . . establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract." Applying this statute, I would hold that the trial judge erred by modifying the parties' agreement. "Code § 20-109 inhibits the power of the court to award or consider modification of the decree to the extent that [monetary conditions] are provided for in the incorporated agreement of the parties." White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999). See also Parra v. Parra, 1 Va. App. 118, 128-29, 336 S.E.2d 157, 162-63 (1985).

This property settlement agreement was drafted and signed in 1996, which was more than fourteen years after Congress addressed the matter of the division of military pensions and passed the Uniformed Services Former Spouses Protection Act, 10

-

U.S.C. § 1408.  See Mansell v. Mansell, 490 U.S. 581 (1989).  In addition, the agreement was signed more than six years after our decision in Lambert v. Lambert, 10 Va. App. 623, 395 S.E.2d 207 (1990), and more than four years after our decision in Owen v. Owen, 14 Va. App. 623, 419 S.E.2d 267 (1992).  Despite this significant passage of time after the Act and these decisions, the agreement fails to define the term "military retention/retirement pay," which the wife is to receive "through direct allotment."  Moreover, the agreement contains no reference to "disposable retired pay," as that term is defined in 10 U.S.C. § 1408(a)(4).  These defects are significant because the Uniformed Services Former Spouses Protection Act has provisions which determine the mechanism of payment by direct allotment.  Those provisions are governed by reference to the "disposable retired pay."  See 10 U.S.C. §§ 1408(c) and 1408(d).

The failure of the parties' agreement to address these matters leaves unanswered what they intended.  The agreement leaves uncertain whether the parties intended that the wife would receive one-half of the husband's disposable retired pay, which she could receive through direct allotment as provided in the agreement.  Likewise, the agreement leaves unclear whether they intended the alternative possibility that the wife would receive one-half of the husband's gross retirement pay without deductions, i.e., disposable retired pay plus disability and other pay.  See Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn.

-

2001) (holding that the agreement's designation of "one-half of all military retirement benefits" meant "all amounts to which the retiree would ordinarily be entitled as a result of retirement from the military"). If the latter had been the parties' intention, however, federal law would not allow the wife to receive the payments through direct allotment, which is the method of payment the agreement specifies.

The portion of the property settlement agreement concerning "military retention/retirement pay" is sparse and ambiguous. See Knoop v. Knoop, 542 N.W.2d 114, 118 (N.D. 1996) (holding that the term "retirement pay" in a settlement agreement is ambiguous because of the definition of "disposable retired pay" in 10 U.S.C. § 1408(a)(4)); Moon v. Moon, 795 S.W.2d 511 (Mo. App. 1990) (holding that the term "retired pay entitlement" in the parties' agreement is governed by the definition of "disposable retired pay" in 10 U.S.C. § 1408(a)(4)). Moreover, the record in this case contains no evidence of the parties' intentions. Indeed, no evidence indicates, for example, as the trial judge effectively found in modifying the agreement, that either party intended to fix the monthly payment at the sum certain of $883.28. Cf. In re Marriage of Gaddis, 957 P.2d 1010, 1010 (Ariz. Ct. App. 1998) (noting that the initial divorce decree awarded the wife the sum certain of "one-half of [the husband's] military retirement benefits as of February 1994"). Thus, I would also hold that the issue before the trial

-

judge concerned the interpretation of an ambiguous agreement which required evidence of the parties' intentions.

For these reasons, I would reverse the order and remand for further proceedings.